In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3507

LILIYA TURUBCHUK, *et al.*,

*Plaintiffs-Appellees*,

*v.*

SOUTHERN ILLINOIS ASPHALT
COMPANY, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-00594 — **Staci M. Yandle**, *Judge*.

ARGUED SEPTEMBER 25, 2019 — DECIDED APRIL 29, 2020

Before RIPPLE, ROVNER, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. A fatal car crash in southern Illinois led to a personal injury lawsuit against the companies repaving the highway where the wreck occurred. That case settled, but plaintiffs later sued again, alleging the companies misrepresented their insurance coverage.

In the second lawsuit a jury agreed with plaintiffs and re-turned a verdict for over $8 million. On appeal defendant Southern Illinois Asphalt Company asks us to reverse that verdict, arguing plaintiffs' claim was invalid and the second lawsuit was marred by a series of errors. Because the errors in this case significantly shaped the course of the proceedings, we reverse the judgment and remand for further proceedings.

## I. Factual and Procedural Background

On August 21, 2005, six family members were driving across the country from the State of Washington to a funeral on the East Coast.[1] While traveling eastbound on Interstate Highway 24 in far southern Illinois their van slipped off a steep edge of the roadway. When the driver tried to steer back onto the road the vehicle swerved and then rolled over several times before coming to a stop on its roof on the shoulder of the road. The crash was so violent the rear axle and wheels were torn off. Everyone was hurt, and one passenger was thrown from the van and died from his injuries.

The crash occurred in a construction zone where the as-phalt had recently been repaved. Two companies—Southern Illinois Asphalt Company and E.T. Simonds Construction

---

[1] Ludmila Nemtsova was driving, and her sister Irina Turubchuk was in the front passenger seat. Behind them in the first bench seat were their parents Liliya and Aleksey Turubchuk. In the second bench seat were the driver Ludmila's children, Elina Nemtsova and Vladislav Nemtsov.

Liliya Turubchuk is the personal representative of the estate of her husband Aleksey Turubchuk. Vladimir Nemstov, who was not in the car, is the parent and guardian of Elina Nemtsova and Vladislav Nemtsov and a named plaintiff in those capacities. We refer to the car's occupants as the plaintiffs.

Company—had formed a joint venture to perform this repaving for the State of Illinois. All lines had not been repainted on the repaved road, and pieces of asphalt lay on the shoulder. The weather was clear and the crash happened one hour after sunrise. Before the repaving work this stretch of highway had a guardrail which had not been replaced before the crash.

### A. First Lawsuit

This dispute involves two lawsuits. The first, which we also call the underlying case, was filed in March 2007 in the U.S. District Court for the Southern District of Illinois. Plaintiffs retained attorney Komron Allahyari and sued the two construction companies alleging they had created unreasonably dangerous conditions, failed to erect appropriate barricades, and not warned of dangers created by the repaving, causing the crash.

Shortly after filing suit Allahyari spoke by telephone with defendants' attorney, Richard Green. Plaintiffs say Green told Allahyari the two companies were operating as a joint venture with a $1 million liability insurance policy. By letter Allahyari then made a $1 million, 30-day time-limited settlement demand of the joint venture. At the same time Green sent Allahyari defendants' initial disclosures under Federal Rule of Civil Procedure 26. The response regarding insurance coverage[2] listed the joint venture's $1 million policy as the only insur-

---

[2] At that time Rule 26(a)(1)(D) provided that "a party must, without awaiting a discovery request, provide to other parties: … any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment … ." Since then the provision has been renumbered Rule 26(a)(1)(A)(iv).

ance coverage; no policies were listed for the companies individually. A copy of the certificate of liability insurance for the joint venture was attached to the initial disclosures.

The construction companies agreed to plaintiffs' settlement demand of $1 million. Plaintiffs signed a release of all claims against defendants individually and as a joint venture. That release contained a "non-reliance clause" in which plaintiffs agreed they were not relying on any statements by, among others, any parties' attorneys. The district court approved the settlement (which included two minors and the deceased's estate) and the first lawsuit was dismissed with prejudice in February 2008.

## B. Second Lawsuit

The particulars of the first lawsuit form the basis for this case filed four years later.

Plaintiffs discovered that the two defendant companies carried their own separate liability policies. Plaintiffs allege they settled the first case for $1 million because the joint venture's policy was limited to that amount, and that the defendants concealed the actual available insurance coverage before settlement. Per plaintiffs, Green should have disclosed under Rule 26 that the contractors had their own liability policies with higher limits. So plaintiffs sued again in the Southern District of Illinois claiming the two construction companies misrepresented "the existence of liability insurance policies potentially available to pay for any judgment" in the underlying case.[3]

---

[3] The complaint in the second lawsuit refiled the same counts as in the first complaint plus misrepresentation and fraud claims. The district court dismissed the refiled claims without plaintiffs' objection, leaving the fraud

Discovery and motion practice ensued. During the seven years the second lawsuit was pending the district court ruled on many matters.[4] Those germane to this appeal include the following:

The parties cross-moved for summary judgment. The district court granted plaintiffs' motion in part, ruling as a matter of law that:

- defendants' failure to identify and provide their individual insurance policies with their initial disclosures or at any time before settlement violated Rule 26, and that the undisclosed individual policies would have afforded coverage for plaintiffs' claims; and

- no joint venture agreement existed between the construction companies based on the court's reading of that agreement.

The court found unresolved factual issues on the other elements of the misrepresentation claim, including whether defendants intended to induce plaintiffs to settle, whether plaintiffs relied on defendants' misrepresentations, whether any reliance was justifiable, and whether and to what extent plaintiffs were damaged. The court denied defendants' motion, including ruling that the release plaintiffs signed to settle the first case did not preclude plaintiffs' claim.

---

and misrepresentations claims. Just before trial in the second lawsuit, plaintiffs elected to proceed on only their negligent misrepresentation claim. The joint venture was not named as a party in either lawsuit.

[4] The district court docket for the second lawsuit contains 446 entries. Only those issues relevant to this decision are reviewed here.

After a motion to reconsider, the district court clarified its ruling on the joint venture: "a joint venture did not exist between the Defendants under Illinois law and, therefore, the joint venture exclusions in Defendants' individual policies were inapplicable to the claims asserted by Plaintiffs in the underlying action."[5]

The defense named as an expert witness retired federal judge Patrick Murphy to offer opinions on liability and the settlement value of the underlying lawsuit. Plaintiffs took issue with Murphy's method and opinions and moved to strike him as a witness. The district court allowed some of his opinions to stand, but it struck others as invading the province of the court. Murphy supplemented his report, which the plaintiffs again moved to strike. The district court granted plaintiffs' request. The defense moved to reconsider this ruling, and the court gave the defense a final opportunity for Murphy to supplement his opinions, which he did, but which plaintiffs yet again moved to strike. The district court granted plaintiffs' motion and precluded Murphy from testifying at trial altogether.

Later the district court ruled on the parties' motions in limine, which further narrowed the issues for trial. The court excluded evidence:

- relating to the facts of the accident and defendants' liability in the underlying case, finding these irrelevant

---

[5] The jury was instructed that while the two companies entered into a joint venture agreement for the paving project, the court had ruled that they did not have a joint venture under Illinois law, and that a joint venture did not exist at the time of the settlement of the underlying case.

to the settlement of the underlying case and plaintiffs' damages case in the second lawsuit;

- that Allahyari had resigned his law license in lieu of disbarment for alleged acts of dishonesty, fraud, deceit, or misrepresentation, which defendants sought to submit as evidence of Allahyari's credibility as a witness;

- that Allahyari's actions in the underlying case violated an attorney's standard of care or were unreasonable; and

- that Green acted reasonably in the underlying case, although the court later ruled that Green failed to make a reasonable inquiry into the existence of all potentially applicable insurance policies.

The court also allowed plaintiffs to name Allahyari as a liability and damages expert witness with opinions on the settlement value of the underlying case. This generated a series of motions and responses by the parties on the scope of Allahyari's testimony, with accompanying rulings from the district court.

Just before trial, plaintiffs elected to proceed on only their negligent misrepresentation claim. To prove this claim under Illinois law, which applies in this diversity case, plaintiffs had to show: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty on the party making the statement to

communicate accurate information. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006).

By then the district court had decided all but one of the elements to establish negligent misrepresentation. In its various rulings the court had found three of these elements as a matter of law: Southern Illinois Asphalt made a false statement of material fact by disclosing only the $1 million policy in its initial disclosures; Southern Illinois Asphalt and its attorney Green were negligent in disclosing only that policy; and plaintiffs justifiably relied on the initial disclosures when settling the underlying lawsuit. The sole liability question—whether Green intended to induce plaintiffs to settle when he sent the disclosures—and any resulting damages were the only elements left for the jury to decide. The jury instructions reflected these district court rulings and the special verdict posed only those inquiries.

The second lawsuit was tried before a jury over three days in March 2018.[6] Allahyari testified live, and portions of Green's deposition testimony were read into the record. The trial testimony centered on the interactions between the parties' lawyers soon after the first lawsuit began. Allahyari testified he made the $1 million demand based on his phone call with Green, and that the demand letter was sent the next day. Allahyari said he would have demanded more had he known about the companies' individual policies. Green said he was retained to represent the joint venture, and that his phone call

---

[6] E.T. Simonds defended the second lawsuit up to the first day of trial and then settled. Southern Illinois Asphalt was the sole defendant at the trial and on the verdict.

with Allahyari took place after, not before, he received the demand letter. Green deposed that in their phone call Allahyari was adamant that plaintiffs wanted $1 million within 30 days. According to Green, Allahyari never asked him if the companies had individual insurance policies. Green was not aware of any other insurance, and given the quick policy-limits demand, he made no additional inquiries about other insurance and defendants accepted plaintiffs' settlement demand.

The jury returned a verdict for plaintiffs against Southern Illinois Asphalt and assessed damages of $8,169,512.84. The district court denied defendant's post-trial motions under Rule 50 for judgment as a matter of law and under Rule 59 for a new trial. This appeal followed. The district court had diversity jurisdiction under 28 U.S.C. § 1332,[7] and this court properly has jurisdiction under 28 U.S.C. §§ 1291 & 1294.

## II. Discussion

### A. Standards of Review

We employ different standards of review based on the issue under consideration.

We review de novo the district court's summary judgment decisions, interpreting the facts and drawing all reasonable inferences in favor of the nonmoving party. *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 950 F.3d 959, 964 (7th Cir. 2020). Rulings on motions in limine are reviewed for abuse of discretion, *Empire Bucket, Inc. v. Contractors Cargo Co.*,

---

[7] Plaintiffs are citizens of the state of Washington, Southern Illinois Asphalt is a Delaware corporation with its principal place of business in Illinois, and plaintiffs claimed individual damages in excess of $75,000.

739 F.3d 1068, 1071 (7th Cir. 2014), although when such rulings involve an issue of law, review is de novo. *See, e.g., Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (employing de novo review of whether court employed correct legal standard in reaching admissibility decision).

A district court's order denying a motion for judgment as a matter of law under Rule 50 is reviewed de novo. *Andy Mohr Truck Center, Inc. v. Volvo Trucks N.A.*, 869 F.3d 598, 602 (7th Cir. 2017). "Judgment as a matter of law is proper  if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015) (quoting FED. R. CIV. P. 50(a)(1)). The evidence at trial is viewed in the light most favorable to the verdict. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016). A district court's denial of a motion seeking a new trial under Rule 59 is reviewed for abuse of discretion. *Id.* at 833. Evidentiary rulings are reviewed for abuse of discretion. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co.*, 849 F.3d 355, 370 (7th Cir. 2017).

### B. Negligent Misrepresentation Claim

Plaintiffs went to trial solely on their claim that Southern Illinois Asphalt by its counsel negligently misrepresented in its Rule 26 initial disclosures the existence of liability insurance policies potentially available to pay damages in the underlying case.

We consider the nature of plaintiffs' state law claim, the district court's pretrial rulings that all but one of the elements of plaintiffs' claim had been satisfied as a matter of law, and

the jury's verdict on the single liability question posed: whether defendant intended to induce plaintiffs to settle.

### 1. *Claim Based on Rule 26*

Southern Illinois Asphalt challenges that a negligent misrepresentation claim under Illinois law can be predicated on an incomplete initial discovery disclosure under Rule 26. Case law does not recognize such a claim, the defendant argues, and any duty an attorney owes under the rule is to the attorney's client, not to an adversary. Plaintiffs respond that Southern Illinois Asphalt waived this argument, and that no authority stands against such a claim. This question raises a legal issue we review de novo.

As to waiver, plaintiffs are correct that certain specified defenses if not raised by motion before an answer can be waived. FED. R. CIV. P. 12(h)(1). But Southern Illinois Asphalt's defense here—that there is no such claim as plaintiffs pursue—asserts plaintiffs failed to state a claim upon which relief can be granted. That defense is "expressly preserved against waiver" by Rule 12(h)(2), advisory committee note to 1966 amendment. Southern Illinois Asphalt preserved this argument by raising it on summary judgment and in its motion for judgment as a matter of law.

On to the merits. The sixth element of the negligent misrepresentation cause of action is a duty on the party making the statement to communicate accurate information. *First Midwest Bank, N.A.*, 843 N.E.2d at 332. The district court concluded, and plaintiffs argue on appeal, that while the underlying cause of action is premised on Illinois state law, the duty of care is set by Federal Rule of Civil Procedure 26. We have not seen such a claim in which the duty under a negligence

analysis is premised on a federal procedural rule. We did not locate, nor did the parties point us to, any cases recognizing a state law duty of care based on a Federal Rule of Civil Procedure.

This dearth follows from the Rules Enabling Act, which gives the judicial branch authority to promulgate the federal rules. The Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). No authority establishes the federal rules as a predicate for a state law negligence claim. Rather, the rules themselves speak to their violation, *see, e.g.,* FED. R. CIV. P. 11, 26(g), and 37, or a statute does so by implication. *See* 28 U.S.C. § 1927. Violation of the federal rules has not been policed by permitting them to serve as the duty component of a state law negligence claim.

On this topic, after the jury's verdict the district court concluded that because plaintiffs "proceeded on a negligent misrepresentation claim; not [a] claim for a violation of Rule 26," this case did not recognize a new private cause of action. But plaintiffs expressly claimed that Southern Illinois Asphalt negligently misrepresented facts in its Rule 26 disclosure and violated its duty under that rule, and the jury was so instructed. The cases the district court cited post-verdict recognizing "a cause of action alleging misrepresentation for the concealment of evidence in underlying actions" are distinguishable, as each involved fraudulent inducement rather than negligent misrepresentation claimed here. We also have not located a case in which an Illinois negligent misrepresentation claim was used to attack an earlier federal court judgment.

Existing authority in this area cuts against plaintiffs' position. In *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006), plaintiffs settled products liability actions against defendant. They later learned that during discovery and before the settlements defendant had failed to reveal damaging test results. *Id*. at 357. Plaintiffs claimed they had been wrongfully induced to settle their previous cases. *Id*. at 358. The district court dismissed the negligence claims, and the Ninth Circuit affirmed, reasoning that "the Federal Rules of Civil Procedure do not create duties on which an opposing party may base a negligence claim." *Id*. at 372. Claims based on negligent violations of Rule 26(e) (and its state law counterpart) did not create a private cause of action. *Id*. at 371.

This court has reached a similar conclusion. In *Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017), on claims of negligent misrepresentation under Illinois law for failure to respond to an interrogatory in state court, this court decided that the duty of care runs from attorney to client, and only goes to third parties when an attorney is hired for that specific purpose. *Id*. at 592. We ruled that it was an error to conflate the duty element of a negligent misrepresentation claim with a duty imposed by a court on attorneys during litigation. *Id*. at 593.

Just so, it was legal error for the district court in the second lawsuit to allow plaintiffs' negligence claim to proceed when it relied on a Federal Rule of Civil Procedure for a duty of care. This is not to say that duty on a negligence claim cannot be determined as a legal matter, as it may be. *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 125 (7th Cir. 1994) ("determination of any question of duty—that is, whether the law imposed upon the

defendant the obligation to protect the plaintiff against the consequences which occurred—is a question of law, and is not for the jury.") (quoting *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 300 (7th Cir. 1985)). Here, though, any duty was rooted in an incorrect source.

### 2. *Elements Satisfied as a Matter of Law*

All but one of the elements of the negligent misrepresentation claim were decided as a matter of law by the district court. In each instance we conclude the court incorrectly stepped into the province of the jury.

First, in its pretrial rulings on summary judgment and in limine, the district court found as a matter of law that Southern Illinois Asphalt was negligent by violating Rule 26 in not identifying its individual insurance policies within its initial disclosures and before settlement. The jury was so instructed. As a matter of law, the court also found the defendant breached its duty, and that plaintiffs justifiably relied on the defendant's representations. And in limine the court precluded the defendant from presenting evidence that Green was not negligent and acted reasonably. As noted above, we review the summary judgment decision for plaintiffs de novo and in limine rulings for abuse of discretion.

On a negligence claim, the jury usually determines whether a defendant has breached a duty. *Fulk*, 22 F.3d at 125. Drawing all reasonable inferences for the nonmovant, the reasonableness of Green's actions was up for debate. Questions remained unanswered on which the jury should have received evidence: What policy information was available to Green before he sent the initial disclosures? What was the effect of plaintiffs' time-limited demand, made before discovery

had begun, on what Green was obligated to disclose and when he did so? Did that time limit mean Green could stop working on the case because it had settled? Once defendants accepted plaintiffs' demand, was it reasonable for Green not to make further discovery inquiries? By finding negligence as a matter of law, the district court precluded Southern Illinois Asphalt's ability to present evidence on these questions and to dispute whether Green acted negligently. The reasonableness of Green's actions was not "undisputed" as the district court concluded.

Plaintiffs argue that whether Rule 26's requirements are met—like complete and correct initial disclosures, and Green making a reasonable inquiry about insurance coverage—are legal issues. But none of the authorities plaintiffs cite concern an alleged tortious act predicated on a rule violation. Genuine issues of material fact exist on this subject, and the district court abused its discretion in its rulings by taking upon itself the jury's function to find facts.

Second, on the element of justifiable reliance the district court followed a similar path. It decided in limine and at the pretrial hearing that as a matter of law plaintiffs justifiably relied upon the initial disclosures, precluding a contest on that question at trial. The court also instructed the jury that this element of negligent misrepresentation had been met.

Southern Illinois Asphalt argues the district court erred when it failed to give effect to a "non-reliance" clause in the release the plaintiffs signed to settle the first lawsuit.[8] Such a

---

[8] That clause reads: "WE DECLARE AND AGREE that no promise or agreement not herein expressed has been made to us that in executing this Release, we am [sic] not relying upon any statement or representation

clause is exculpatory, the defendant argues, under *Adler v. William Blair & Co.*, 648 N.E.2d 226 (Ill. App. Ct. 1995), which held that under Illinois law this type of provision precludes justifiable reliance in a later misrepresentation action. *Id*. at 232-33. Southern Illinois Asphalt pleaded this as an affirmative defense in its answer. Alternatively, the defendant submits, the jury should have been free to consider as a factual question whether this clause applied. Plaintiffs respond that *Adler* is distinguishable and that their claim falls within *Bauer v. Giannis*, 834 N.E.2d 952 (Ill. App. Ct. 2005), which held in the real estate property disclosure setting that a non-reliance clause was not a defense to fraudulent misrepresentation and concealment claims when a person discloses false information. *Id*. at 955.

At the pretrial motion hearing, the district court ruled as a matter of law that the type of representation made in the initial disclosure justified reliance on it: "[P]laintiffs had a right to rely on the truthfulness and accuracy of the disclosures. So, the question of whether or not their reliance was justified has already been decided as a matter of law."

The question of justifiable reliance considers what the plaintiffs knew and what they could have learned through the exercise of ordinary prudence. *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). Under Illinois law, whether reliance is justified is a question of fact that is to be viewed in

---

made by the parties hereby released or the parties' agents, servants, attorneys, or other person concerning the nature, extent, or duration of decedent's injuries and death and damages, or concerning any other thing or matter, but am [sic] relying solely upon our own judgment and the advice of our attorney."

light of the surrounding circumstances. *Schrager v. North Community Bank*, 767 N.E.2d 376, 387 (Ill. App. Ct. 2002).

On the insurance disclosure, in dispute is what plaintiffs could have learned if an opportunity existed to discover the truth, such as during civil discovery in the first lawsuit. If more or different facts had been discovered, reliance may or may not have been justified. The facts found also may impact the application of the "anti-reliance" clause in the release, and whether the rule of *Adler* or of *Bauer* applies. But because the district court decided this issue before trial, whether plaintiffs relied on the May 15, 2007 disclosures—and if so whether it was reasonable to do so—was never explored. The district court thus abused its discretion by deciding the element of justifiable reliance as a matter of law.

Third, on plaintiffs' motion for partial summary judgment (and later revisited on post-verdict motions) the district court found that under Illinois law no joint venture existed between Southern Illinois Asphalt and E.T. Simonds. The court considered the defendant companies' arrangements and their written agreement, but concluded that evidence relating to the degree of joint proprietorship and mutual right to exercise control over the enterprise did not support the existence of a joint venture. The court found that the companies managed their affairs on the project separately, they had no control over the methods or policies used by the other, and they could not exert control over the work of the other.

The joint venture question was key to this case, as it had ramifications as to insurance coverage. Initially, the district court ruled that the companies' individual policies would have afforded coverage; later, this was modified to rule that

because the companies did not have a joint venture, joint venture exclusions did not apply. For plaintiffs to succeed on their claim that Green negligently misrepresented the insurance potentially available to settle the first lawsuit, more insurance must have been available than the $1 million joint venture policy disclosed. So existence of the joint venture went to causation and damages. We review this decision de novo and view the facts in the light favorable to the non-movant.[9]

Unfortunately, this joint venture ruling was ill-fated from the beginning. In their pleadings plaintiffs alleged and companies admitted that a joint venture existed between the companies. The joint venture was the party to the contract with the State of Illinois for the repaving work. Attorney Green was hired on behalf of the joint venture, and plaintiffs' demand letter twice stated they brought their claim against the companies acting as a joint venture. In March 2007 when Allahyari and Green discussed the case and negotiated the settlement, this was the state of the parties' knowledge, all of which pointed to the existence of a joint venture.

To reach the opposite conclusion the district court relied on the wording of the companies' joint venture agreement. But its limited reading took some clauses out of context and failed to consider others. For example, after the phrase in the joint venture agreement each company was "free to conduct

---

[9] While Southern Illinois Asphalt raised this issue in its motion for judgment as a matter of law, because evidence on the issue was precluded by the district court's summary judgment ruling, no trial evidence was presented on this topic, so we need not address it under the judgment as a matter of law standard of review.

its respective business," the full quotes show that the companies' mutual obligations and rights were limited to the repaving project, and that clause's purpose was to avoid a general partnership being created between the companies. Also, the phrase in the agreement that each company is "solely responsible" concerned a portion of the project (smoothing assessments), not the entire project.

Other contract provisions also undercut the district court's conclusion that there was no joint venture. The clause that states if one party failed to perform the other party may take over is consistent with joint venture law. *See generally Ambuul v. Swanson*, 516 N.E.2d 427, 430 (Ill. App. Ct. 1987). Even more, the contract with the State of Illinois for the repaving work stated that both companies were responsible for performing "all the work." Given that the companies established a division of labor and exercised joint control rights over the project's work, the district court's reading of the agreement unduly emphasized the control aspect of the parties' relationship.

At the least, whether a joint venture existed between Southern Illinois Asphalt and E.T. Simonds presented a question of fact, and the district court erred by prematurely ruling on it as a matter of law. So we reverse the district court's ruling on this point.

### 3. *Intent to Induce Element*

The only element of the negligent misrepresentation claim to go to the jury was whether Southern Illinois Asphalt by attorney Green intended the initial disclosure to induce plaintiffs to settle the underlying case for $1 million. We review de novo the district court's order denying a motion for judgment

as a matter of law under Rule 50, and we review the evidence in the light most favorable to the verdict.

Viewing Allahyari's trial testimony through that lens, he telephoned attorney Green on May 14, 2007 to confirm if there "were other insurance policies out there." Green told him the $1 million policy "was it" and "[t]here were no other policies." Allahyari asked Green to confirm this in writing. Green responded he would "do you one better than that. I'll give you immediately the initial disclosures." Plaintiffs' $1 million demand letter was sent the day of their phone call to settle the case for that amount based on, Allahyari testified, Green's representation. Allahyari relied on what Green told him during their phone call. Green sent Allahyari the initial disclosures by email the next day.[10]

Southern Illinois Asphalt argues the jury's verdict should not stand because the only evidence to support this element was the testimony of Allahyari which, even viewed favorably to the verdict, lacked foundation and was speculative. Plaintiffs respond Allahyari's evidence may have been circumstantial, but it supported a reasonable inference that defendant in these disclosures intended to induce settlement for $1 million.

The district court initially excluded Allahyari from speculating as to Green's motive in disclosing only the joint venture policy. During trial, though, after a question from plaintiffs' counsel, the district court reversed field and over defendant's

---

[10] At trial plaintiffs' counsel asked Allahyari why he would have sent the $1 million demand letter after he spoke with Green but before he received the initial disclosures. Allahyari responded that if the Rule 26 disclosures had listed additional insurance, then he would have withdrawn the demand and resubmitted a higher one.

objections allowed Allahyari to speak to whether the disclosure was done to induce settlement.

The district court's initial ruling on this question was correct and should have controlled. Federal Rule of Evidence 602 requires a witness to have personal knowledge of a matter, and Allahyari could not know what Green intended when serving the initial disclosures. No evidence, direct or circumstantial, was presented on this inducement element other than Allahyari's testimony, which was conjecture based on plaintiffs' theory of the case. A plaintiff's conjecture as to a defendant's motive is not enough to establish inducement. *See, e.g., Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841-42 (7th Cir. 2007). Any reliability of this evidence was vitiated by pretrial rulings which incorrectly cramped what evidence Green could offer about his phone call with Allahyari. It was an abuse of discretion to admit this evidence.

Allahyari also was allowed to testify as an opinion witness, including on this element.[11] But the district court improperly excluded evidence concerning Allahyari's credibility, including that he had resigned his law license in lieu of disbarment for alleged acts of dishonesty, fraud, deceit, or misrepresentation. *See* FED. R. EVID. 608 (witness's character for truthfulness or untruthfulness). At trial, therefore, the jury heard from an attorney recognized as an expert, but who had lost his law license under a cloud and whose qualifications

---

[11] Q.: "And in your opinion, was that early disclosure of this [insurance] information, after having this telephone call, done in an effort to induce you and your clients to accept only a million dollars to resolve this case?"

[Objections on foundation and speculation overruled.]

A.: "Yes, it was."

and credentials could not be impeached. That attorney was allowed to give evidence on another lawyer's intent whose testimony on the same facts had been incorrectly limited. Such circumstances also constituted an abuse of discretion. And because Allahyari's testimony was the only evidence on this element of plaintiffs' claim, no other trial evidence supports the jury's verdict, which therefore must be reversed.

On the topic of opinion witnesses, Southern Illinois Asphalt also appeals the exclusion of Murphy whom the defense named as a retained expert. Plaintiffs agree with the district court that Murphy's report lacked a description of the methodology he employed to reach his opinions. Defendant disagrees that the methodology was deficient and contrasts the exclusion of Murphy and his damages opinions with Allahyari's testimony on the same matter.

Opinion evidence is admissible if the proponent witness's specialized knowledge will help the trier of fact determine a fact in issue, the testimony is based on sufficient facts or data, it is the product of reliable methods, and the witness has reliably applied those methods to the facts of the case. FED. R. EVID. 702; *see Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 778-783 (7th Cir. 2017) (reviewing principles of admissibility of expert testimony). As gatekeeper, the district court must decide whether putative opinions are offered *ipse dixit*. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989); *Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes  my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term.").

Murphy's report was grounded on more than his word and presented more than a bottom line. His updated report plus appendices showed that he reviewed thousands of pages of medical records, bills, court filings and decisions, depositions with exhibits, reports, and various other pertinent information. His calculations detailed this case's settlement value and the bases for his valuation. He gave the "why" underlying his opinions, identifying and explaining five reasons for his settlement valuation of the underlying case. He analyzed the counterfactual of how this case would have come out if the companies' individual insurance policies had been disclosed and provided coverage. In that alternative scenario, he explained the reasons for his conclusions. Murphy's work was rooted in his 16 years' experience as a federal district judge and 25 years in the private practice of law, including handling many insurance and personal injury cases. This effort amply displayed the methodology Murphy employed and met the requirements of Rule 702. *Cf. Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (ruling expert's *ipse dixit* conclusion inadmissible when report failed to say what software was used, what data was entered, what results were produced, and how alternative explanations were ruled out).

Indeed, the methods Murphy employed in his report did not differ from those of Allahyari. They relied on the same information, but Allahyari's opinions did not include the same level of detail as Murphy's. Allahyari also brought to bear no experience as a judge, and 20 years as a lawyer rather

than Murphy's 40 years at the bar and 25 years in private practice.[12]

While a court need not balance the opinion testimony of one party against the other, Allahyari's inclusion and Murphy's exclusion displayed a fundamental disparity in evidentiary rulings. For a time, by allowing Murphy to supplement his expert disclosure the district court recognized this incongruity. But in the end Murphy was excluded as a witness, and plaintiffs' opening statement noted this disparity. Due to Murphy's exclusion, Southern Illinois Asphalt was not allowed to present evidence about the value of the underlying case, an extreme consequence. The district court could have taken the less drastic step of striking certain opinions, which would have permitted the defendant to respond in a meaningful manner, rather than for the jury to hear only one side's opinion on damages.

Because the methodology Murphy employed met the requirements of Rule 702, the district court's exclusion of his testimony in its entirety "clearly appears arbitrary" and was an abuse of discretion. *Karum Holdings LLC v. Lowe's Co., Inc.*, 895 F.3d 944, 951 (7th Cir. 2018).

### 4. *Summary on Negligent Misrepresentation Claim*

Plaintiffs incorrectly based their negligent misrepresentation claim on Federal Rule of Civil Procedure 26. The district court also incorrectly found as a matter of law that all but one of that claim's elements had been met. The evidentiary decisions reached on that element were an abuse of discretion,

---

[12] At the time of trial Allahyari had not practiced law for seven years and was running an internet advertising business.

and viewing the trial evidence in a light most favorable to the verdict, the jury's verdict must be reversed.

Southern Illinois Asphalt has repeatedly requested that judgment be entered as a matter of law in its favor on plaintiff's claim. We have considered its requests, but we decline to do so. The type and number of errors that occurred here greatly affected the path that the second lawsuit traveled from its inception. In an abundance of caution, we think it best to reverse the judgment in its entirety and remand for proceedings consistent with this opinion in order to secure a just determination of the parties' dispute. *See* FED. R. CIV. P. 1.

The standard of review for denial of a motion for new trial is abuse of discretion. *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2018). For the reasons listed above, the district court abused its discretion by not granting the Rule 59 motion by Southern Illinois Asphalt for a new trial. Because of this resolution we need not discuss the other issues raised on appeal, including the parties' arguments as to damages.

### III. Conclusion

Due to the number of errors before, during, and after the trial of this case, the district court's judgment is REVERSED in its entirety and this case is REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 will be in effect.