In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-2853

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LANCE A. WEHRLE,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 17-CR-30074-NJR — **Nancy J. Rosenstengel**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 25, 2020 — DECIDED JANUARY 15, 2021

———————————

Before RIPPLE, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* After detecting an internet protocol address downloading child pornography, police executed a warrant to search Lance Wehrle's home. They seized hard drives and digital devices that contained over one million photos and videos of child pornography. The search also turned up lascivious photos taken in his home depicting the seven-year-old nephew of Wehrle's friend.

Wehrle was indicted for producing and possessing child pornography. Following a bench trial he was convicted and sentenced to 40 years' imprisonment. On appeal Wehrle challenges various district court rulings underlying his conviction and sentence. We affirm in all respects.

**I**

In March 2017, Jerseyville, Illinois, Police Officer Amanda Wimmersberg detected an IP address requesting child pornography using a peer-to-peer file-sharing network called Freenet. As a member of the Federal Bureau of Investigation's Violent Crimes Against Children Task Force and Internet Crimes Against Children Task Force, she was certified to investigate on Freenet and had previously conducted more than 40 similar investigations. Wimmersberg determined that the IP address belonged to Wehrle, and she and other agents executed a search warrant on his residence.

During the search the agents found a photo album in Wehrle's bedroom. In the album they discovered a photograph depicting A.E. lying on a blanket with his penis exposed. The background of the photograph matched the items they found in Wehrle's living room—a red blanket, a circular TV stand, and a fish tank—indicating that the picture was taken inside his home. The agents seized external hard drives, flash cards, and other digital devices. A preliminary forensic review of the hard drives revealed additional pornographic images of A.E. These images depicted Wehrle performing oral sex on A.E., Wehrle holding a cigarette lighter next to A.E.'s genitals, and A.E. performing lewd acts on a sex toy. Wimmersberg reviewed the devices and found over one million images and videos of child pornography, including more than 50 additional images of A.E. In an interview with police the

same day as the search, Wehrle acknowledged he had down-loaded child pornography using Freenet.

A federal grand jury indicted Wehrle on two counts of producing child pornography and one count of possessing child pornography.[1] The case went to a bench trial at which Wimmersberg testified about her investigation and the forensic examination process. She described her professional background and experience, as well as the methods she employed to extract the data from Wehrle's digital devices.[2] She also detailed the hardware and software used to maintain the integrity of the original data.

The district court viewed approximately 70 images and videos, 28 of which featured A.E. Wehrle attempted to disqualify Wimmersberg as an expert witness, but the district court "found her to be credible and that her credentials and qualifications for the investigation in this case were not in any way suggestive that the evidence was in any way not properly obtained or there was any problem with the investigation." The district court found Wehrle guilty on each of the indictment's three counts and sentenced him to a below-guidelines sentence of 40 years' imprisonment: 30 years on each of the production counts to be served concurrently, and 10 years on the possession count to be served consecutively.

---

[1] The district court had jurisdiction over the criminal case pursuant to 18 U.S.C. § 3231.

[2] The devices from which the offending files were extracted included hard drives, USB drives, and memory cards, but no cell phones. R. 65.

## II

Wehrle raises four challenges on appeal: (1) whether the district court abused its discretion by failing to qualify Wimmersberg as an expert witness; (2) whether the admission of trade inscriptions found on the seized devices violated the rule against hearsay and the Sixth Amendment Confrontation Clause; (3) whether 18 U.S.C. § 2251(a), which criminalizes the production of child pornography, violates the Commerce Clause; and (4) whether the district court's sentencing decision was substantively unreasonable.[3]

## A

First is Wehrle's claim that Wimmersberg should have been qualified as an expert witness. We review a district court's evidentiary rulings for abuse of discretion. *See Turubchuk v. S. Ill. Asphalt Co., Inc.*, 958 F.3d 541, 548 (7th Cir. 2020). Even if a district court abused its discretion, "[w]e will not reverse if the error is harmless in light of the trial record as a whole." *Viramontes v. City of Chicago*, 840 F.3d 423, 430 (7th Cir. 2016). When a party fails to preserve an objection at trial, we review for plain error. *See* FED. R. CRIM. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Wehrle argues the district court abused its discretion by failing to qualify Wimmersberg as an expert witness when her detailed discussion of the technical aspects of her investigation deviated into opinion testimony under Federal Rule of Evidence 702. When Wimmersberg began discussing the image-extracting process, Wehrle's counsel objected based on

---

[3] This court has jurisdiction pursuant to 28 U.S.C. §§ 41 and 1291, and jurisdiction to review Wehrle's sentence pursuant to 18 U.S.C. § 3742.

"foundation" and "Rule 702." He repeated the same objection throughout her testimony by referencing his "earlier objection based upon the processing." We conclude that these repeated invocations sufficiently preserved this objection to the technical aspects of Wimmersberg's testimony, so we review the district court's ruling on this evidence for abuse of discretion.

Expert testimony generally involves technical concepts beyond ordinary understanding. *See* FED. R. EVID. 702. "[A]n officer testifies as an expert when he brings 'the wealth of his experience as [an] officer to bear on those observations and ma[kes] connections for the jury based on that specialized knowledge.'" *United States v. Gaytan*, 649 F.3d 573, 582 (7th Cir. 2011) (some alterations in original) (quoting *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007)). A forensic-examination process falls within Rule 702's ambit if it involves "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–91 (1993).

The forensic-examination process here implicated Rule 702 because Wimmersberg testified to technical concepts beyond ordinary knowledge. During her direct examination, she was asked, "How do you go about conducting a forensic examination of a device?" She first explained the use of a "write blocker," a tool that permits access to data while protecting the integrity of the seized device. She then described the use of data-extraction software. She also described the reliability and safeguards in the software that prevent any alteration of the original data, and she discussed other technical concepts such as hashes (which convert one value to another

and can establish identity) and metadata (data which gives information about other data).

We recognize that not all testimony about the use of "technical" equipment will implicate Rule 702. Some uses are commonplace today. But even if a lay person may understand an officer's testimony about one of these concepts in isolation, an explanation of how they work together to preserve information and the integrity of the data crosses into Rule 702 territory. So we conclude Wimmersberg's testimony here concerning technical aspects of a forensic examination constitutes "specialized knowledge" under Rule 702.[4] Admitting her specialized knowledge without formally qualifying her as an expert witness was an abuse of discretion.

Although the district court abused its discretion, any error associated with the admission of this testimony was harmless. *See* FED. R. CRIM. P. 52(a) ("Any error … that does not affect substantial rights must be disregarded."). An error is harmless if it "do[es] not have an effect on the outcome because the case against the defendant is so overwhelming absent the erroneously admitted evidence." *United States v. Quiroz*, 874 F.3d 562, 571 (7th Cir. 2017); *see also United States v. Brown*, 871 F.3d 532, 536 (7th Cir. 2017) ("[A] new trial is appropriate only if the average juror would have found the government's case significantly less persuasive had the wrongly excluded evidence been admitted."). The evidence of Wehrle's guilt at the bench trial was overwhelming. He confessed to police about abusing A.E. and downloading child pornography. At least one of the photographs depicted Wehrle performing oral sex on A.E., and the pornographic nature of the photos Wehrle

---

[4] R. 122 at 66–68.

produced and possessed was not disputed at trial. Even if the district court's admission of Wimmersberg's testimony about the forensic examination technology is deemed improper, the government could have presented another witness to offer the same explanations about the data-extraction software. Because the outcome would have been the same, the error was harmless.

While we conclude that Wimmersberg's detailed discussion of the technical aspects of her investigation crossed over into expert testimony, her characterization of the images as "child pornography" did not. We review this question for plain error because Wehrle's counsel failed to specifically raise this objection at trial.[5] Under plain-error review, a defendant must show (1) an "error or defect," (2) that is "clear or obvious," (3) affecting his "substantial rights," (4) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (internal quotation marks omitted).

Wimmersberg answered "yes" to the prosecutor's question asking whether the seized devices contained "child pornography." Wehrle argues that characterization was not merely descriptive, but the phrase instead constituted an impermissible legal conclusion.

Wehrle's challenge here falls short. We have held that expert testimony is unnecessary if "the fact that the unidentified

---

[5] Wehrle claims he objected to Wimmersberg's characterization of the images and videos as "child pornography," which the government disputes. We read the transcript as Wehrle objecting to the officer's discussion of the technical aspects of the forensic examination process, but not the use of the phrase "child pornography." R. 122.

subject is a child will be obvious from appearance." *United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019); *see also United States v. Lacey*, 569 F.3d 319, 325 (7th Cir. 2009) ("[E]xpert evidence is not required to prove the reality of children portrayed in pornographic images."). Wimmersberg's characterization of the images as "child pornography" was properly admitted as fact testimony because it was an ordinary and accepted way to describe what she had observed. *See Dewitt*, 943 F.3d at 1096. Wehrle's images and videos depicted children, and they involved the display of genitalia and sexual acts. So the district court did not err when it admitted Wimmersberg's "child pornography" characterization.

**B**

Wehrle's second challenge to his conviction concerns the admission of trade inscriptions on his seized equipment. He contends those inscriptions constituted inadmissible hearsay and violated his Sixth Amendment right to confront the evidence against him.

*Hearsay*. Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. *See* FED. R. EVID. 801(c)(1). Hearsay evidence is generally inadmissible unless an exception applies. *See* FED. R. EVID. 803. Even if hearsay evidence does not fall under any of the enumerated exceptions, a court may admit the otherwise inadmissible evidence under Rule 807's residual exception. To satisfy the residual exception, a proponent of hearsay evidence must establish five elements: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice. *See* FED. R. EVID. 807; *see also United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016). Trial courts have broad discretion in admitting evidence under

Rule 807. *See id.* We review Wehrle's hearsay claim for abuse of discretion because he objected on that ground at trial. *See United States v. Turner*, 836 F.3d 849, 857 (7th Cir. 2016).

On appeal, the government argues the trade inscriptions found on Wehrle's devices, even if hearsay, are admissible under Rule 807's residual exception. Here the trade inscriptions "Made in China" and "Product of China" were affixed to Wehrle's camera, flash cards, and hard drives. The government introduced the evidence to establish that Wehrle produced and possessed child pornography with materials transported using channels of interstate or foreign commerce.

The district court did not abuse its discretion in admitting the trade inscriptions. We will reverse only if "no reasonable person could take the view adopted by the trial court." *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008). We have stated "[t]he purpose of Rule 807 is to make sure that reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence." *Moore*, 824 F.3d at 624. Trade inscriptions are self-authenticating, meaning they "require no extrinsic evidence of authenticity in order to be admitted." FED. R. EVID. 902.

While self-authentication alone does not qualify a trade inscription as an exception to the hearsay rule, trade inscriptions exhibit a high level of trustworthiness, satisfying Rule 807. Federal regulations require trade inscriptions on products imported from abroad and prohibit false or misleading designations of origin. *See* 19 U.S.C. § 1304(a); 15 U.S.C. § 1125(a). There is also little incentive for a company to manufacture a product in the U.S. and then deceptively affix a "Made in China" trade inscription. Other circuits agree that

trade inscriptions have sufficient indicia of reliability to sat-
isfy the residual exception. *See, e.g., United States v. Boles*, 914
F.3d 95, 109 (2d Cir. 2019); *United States v. Burdulis*, 753 F.3d
255, 263–64 (1st Cir. 2014).

*Confrontation Clause*. Wehrle also argues the admission of
the trade inscriptions violated his rights under the Sixth
Amendment's Confrontation Clause. Because he raises this
objection for the first time on appeal, we review for plain er-
ror. FED. R. CRIM. P. 52(b). *See United States v. Barber*, 937 F.3d
965, 967 (7th Cir. 2019).

The Confrontation Clause prohibits the "admission of tes-
timonial statements of a witness who did not appear at trial
unless he was unavailable to testify, and the defendant had
had a prior opportunity for cross-examination." *Crawford v.
Washington*, 541 U.S. 36, 53–54 (2004). This right applies only
to testimonial evidence. *See Giles v. California*, 554 U.S. 353, 376
(2008). Testimonial evidence includes "formal statements to
government officers, or formalized testimonial materials such
as affidavits, depositions, and the like, that are destined to be
used in judicial proceedings." *United States v. Brown*, 822 F.3d
966, 974 (7th Cir. 2016). Business records, however, are gener-
ally nontestimonial because "they are not made for the
purpose of later prosecution." *Id. Cf. Melendez-Diaz v.
Massachusetts*, 557 U.S. 305, 321 (2009) (noting that documents
created for use at trial do not qualify as business records).

The trade inscriptions at issue are nontestimonial. The in-
scriptions denoting an item's foreign origin are not created in
preparation for a future judicial proceeding. Rather, they are
created to comply with federal regulations requiring labels of
place of origin for imported products. Because trade

inscriptions are nontestimonial, there is no Confrontation Clause issue here, and the district court did not err in admitting them.

C

Next Wehrle contends that 18 U.S.C. § 2251(a), which criminalizes the production of child pornography, violates the Commerce Clause. Because he failed to raise this challenge at trial, we review for plain error. *See United States v. Williams*, 410 F.3d 397, 400 (7th Cir. 2005).

The Commerce Clause enables Congress to regulate and protect the use of the channels of commerce, instrumentalities of interstate commerce, and those activities having a substantial relation to interstate commerce. *See United States v. Lopez*, 514 U.S. 549, 558–59 (1995). This authority extends to "purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzalez v. Raich*, 545 U.S. 1, 17 (2005). We have held that § 2251(a) is constitutional when evaluating whether the statute was a permissible exercise of Congress's Commerce Clause power "to prevent the spread of injurious or immoral uses. … and also to protect those channels from the immoral impact of child pornography." *United States v. Schaffner*, 258 F.3d 675, 680 (7th Cir. 2001) (citation omitted).

In § 2251(a) Congress has validly exercised its power under the Commerce Clause. Congress has proper authority to regulate this field because possession and production of child pornography substantially affect interstate commerce. In *United States v. Blum*, we highlighted that "the manufacture and possession of any child pornography itself feeds the market and increases demand for it." 534 F.3d 608, 612 (7th Cir.

2008), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002) (recognizing the interstate market for child pornography). Wehrle possessed and produced child pornography using devices that had been mailed, shipped, or transported using channels of interstate commerce. That is an adequate hook for Congress to exercise its Commerce Clause power. The district court did not commit any error when it rejected Wehrle's Commerce Clause challenge.

## D

That leaves us with Wehrle's challenge to the substantive reasonableness of his sentence. We "generally defer to a sentencing court's judgment and review the substance of criminal sentences only for abuse of discretion." *United States v. Banas*, 712 F.3d 1006, 1009–10 (7th Cir. 2013). A below-guidelines sentence is presumptively reasonable. *See United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018).

The district court calculated Wehrle's sentencing guideline range as 70 years' imprisonment. But Wehrle ultimately received a below-guidelines sentence of 40 years' imprisonment. At sentencing the district court heard and weighed the 18 U.S.C. § 3553(a) factors, considering Wehrle's employment history, military service, and other mitigating factors as well as aggravating factors such as the size of his child pornography collection and the severity of harm he inflicted on A.E. Wehrle points to nothing to overcome the presumptive reasonableness of his below-guidelines sentence. His sentence was therefore substantively reasonable.

For these reasons, we AFFIRM.

Sᴛ. Eᴠᴇ, *Circuit Judge*, concurring in part. I join the major-ity's conclusion that Mr. Wehrle's conviction and sentence should be affirmed. I further agree that the evidence against Wehrle was "overwhelming," and any error by the district court in admitting Officer Wimmersberg's testimony was harmless. I write separately to briefly address the majority's conclusion that Officer Wimmersberg's testimony constituted expert testimony under Federal Rule of Evidence 702.

In testifying about her process for extracting images from Wehrle's storage devices, Officer Wimmersberg testified to simply "hook[ing] up" the Defendant's storage devices to a write blocker, which "just prevents anything from being writ-ten to that device" and then "imag[ing] the drive." Although members of the general public may not be familiar with the particular programs she used to do so, the average person would be familiar with the concepts of extracting data from a device and preserving the data on the origin device.

The majority today concludes that this is expert testimony, but its analysis is in tension with several decisions by our sis-ter circuits, which each conclude that testimony regarding the mere extraction of data from a cell phone does not require ex-pert certification under Rule 702. *See United States v. Montijo-Maysonet*, 974 F.3d 34, 47 (1st Cir. 2020); *United States v. Chavez-Lopez*, 767 F. App'x 431, 433–34 (4th Cir. 2019); *United States v. McLeod*, 755 F. App'x 670, 673–74 (9th Cir. 2019); *see also United States v. Marsh*, 568 F. App'x 15, 17 (2d Cir. 2014).

In *Montijo-Maysonet*, the First Circuit concluded that an of-ficer's testimony about extracting data from a sex-crime vic-tim's cell phone was properly admitted, even though the of-ficer was not qualified as an expert. 974 F.3d at 47. There, an officer testified that "investigators used forensic software to

copy the same info from [the defendant's] phone and display it on paper." *Id.* at 48. The court observed that "These days, most anyone with a cellphone knows they store information about text messages, including the sender, recipient, and content. You don't need to be a software engineer to pick up a cellphone [and access its contents]." *Id.* at 47. Because of the public's familiarity with how to view and retrieve cellphone messages, the court agreed that the district court did not abuse its discretion in permitting this testimony without qualifying the testifying officer as an expert in "cell phone extractions of forensic analysis." *See id.* at 47–48.

Similarly, in *Chavez-Lopez*, the Fourth Circuit concluded that an officer's testimony regarding data extraction from a cell phone was not expert testimony. 767 F. App'x at 433–35. The court reasoned that the testimony only "concerned the actions he took to extract the data." *Id.* at 434. So, the officer's "role as a witness [was] best characterized as testifying about facts in his personal knowledge." *Id.* Furthermore, the officer "offered no assurances about how well Cellebrite [the extraction program] performed." *Id.* The testimony "didn't require a technical understanding" of the program, and the officer only testified about "copying data from one drive to another, which is 'the product of reasoning processes familiar to the average person in everyday life.'" *Id.* (citations omitted).

Finally, in *United States v. McLeod*, the Ninth Circuit found that any error in admitting lay testimony regarding the extraction of images of child pornography from a defendant's cell phone was harmless. *See* 755 F. App'x at 673. Before concluding that such error was harmless, however, the majority opinion suggested that the lay testimony was permissible for similar reasons as explained in *Montijo-Maysonet* and *Chavez-*

*Lopez*. *See id.* ("At trial, Detective Jackson testified about how he used a Cellebrite device during the course of his investigation to download information from one of the victim's cell phones onto a thumb drive and then testified about the contents of that information. He testified about what Cellebrite does and how he used it in the course of his investigation to extract information from the victim's cell phone. … In short, Detective Jackson testified about his use and interaction with Cellebrite—and how he extracted data from one of the victim's phones in this case.")

Based on the persuasive reasoning by our sister circuits in the above cases, I would conclude that Officer Wimmersberg's testimony was proper lay testimony. Although the above cited cases involve cell phones, and not external storage devices like the ones at issue here, the distinction does not impact the analysis given the simplicity of the devices involved, the familiarity of the public with these kinds of devices, and the lack of any allegations that the devices were manipulated to hide or alter their contents. In this case, Officer Wimmersberg's testimony was limited to her use of simple data preservation and extraction programs, and she did not opine on the efficacy or reliability of those programs in general. Moreover, the concept of preserving data in its original format while making a copy of that data was well within the public's understanding in 2019, at the time of Wehrle's trial. *Cf. United States v. Christian*, 673 F.3d 702, 708–09 (7th Cir. 2012) ("Lay testimony results from a process of reasoning familiar in everyday life[.]") (quoting Fed. R. Evid. 701 advisory committee's note (2000 amends.)); *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015) ("It is common knowledge that a USB drive functions as an external storage device. These drives store files when an individual places those files onto the device.

These drives do not come pre-loaded with child pornography.").

There are cases in which the collection of digital data would require expert testimony due, for example, to the sophisticated nature of the particular forensic analysis or the equipment deployed, or the technical nature of the testimony. But this is not one of those cases. Importantly, this is not a case in which the defendant has allegedly deleted or otherwise manipulated images of child pornography, *see United States v. Haymond*, 672 F.3d 948 (10th Cir. 2012); nor has Defendant claimed that the images here did not display real children, *see United States v. Fabrizio*, 445 F. Supp. 2d 152 (D. Mass. 2006); nor has Defendant claimed that someone else accessed these images or videos from his devices, *see United States v. Moreland*, 665 F.3d 137 (5th Cir. 2011). Defendant had exclusive use of the digital storage devices; he lived alone, aside from the occasional visits from the minor victim, and he does not claim that the images arrived on his devices by way of errant googling or auto-caching, s*ee United States v. Carroll*, 886 F.3d 1347 (11th Cir. 2018).

Based on the particular facts of this case and the abuse of discretion standard, I would find that the district court did not abuse its discretion in admitting Officer Wimmersberg's testimony as lay testimony. I join the majority's opinion in all other respects.