In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1295

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHAWN M. DEWITT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:17-cr-110 — **Jon E. DeGuilio**, *Judge.*

ARGUED SEPTEMBER 25, 2019 — DECIDED NOVEMBER 27, 2019

Before FLAUM, SYKES, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Trials often require jurors, as lay-people considering evidence, to draw inferences based on their life experiences. The duty is most unenviable in cases requiring jurors to view images of child sexual abuse. After doing so in Shawn Dewitt's trial, the jury found him guilty of child pornography offenses. Dewitt argues the government's evidence was insufficient because the jury heard no expert testimony (from a medical doctor, for example) about the age

of girls depicted in images sent from his cellphone. While some cases may present close calls that benefit from expert evidence, this one does not. The jury heard and saw more than enough to make a reliable finding that Dewitt possessed, produced, and distributed images of children. We affirm.

**I**

**A**

Shawn Dewitt was living in Lafayette, Indiana with his fiancée, three-year-old son, and four-year-old daughter when he began chatting with Timothy Palchak on an anonymous phone application. The two men met in an online group called "Open Family Fun." Unbeknownst to Dewitt, Palchak was an undercover officer and member of the FBI's Internet Crimes Against Children Task Force who had targeted the group for a sting operation because its name suggested sexual interest in children.

In their online conversation, Dewitt told Officer Palchak about his children. Officer Palchak reciprocated by conveying information about his (fictitious) nine-year-old daughter. Dewitt admitted to sexually abusing his four-year-old daughter but made plain he preferred slightly older girls—"development age" girls at the beginning of puberty, as he put it. He offered to send images of himself abusing his daughter if Officer Palchak would do the same.

While repeatedly soliciting images of Officer Palchak's daughter, Dewitt also sent one video and one still image of fully nude girls. Dewitt accompanied the images with descriptions of the sexual acts he would like to see Officer Palchak's nine-year-old daughter perform.

In time the FBI arrested Dewitt and seized and searched his phone. The search uncovered the images sent to Officer Palchak and a photo of Dewitt engaged in a sexual act with his four-year-old daughter. All of this led to a grand jury charging Dewitt with three counts relating to the production, distribution, and possession of child pornography in violation of 18 U.S.C. §§ 2251(a), 2252(a)(2), and 2252(a)(4)(B). He proceeded to trial, and a jury returned a guilty verdict on all counts. The district court sentenced Dewitt to 30 years' imprisonment.

B

At trial Dewitt objected to the district court's admission of the photograph and video he sent to Officer Palchak, which formed the basis of the distribution charge. He contends that the law required the government to present expert testimony about the subjects' ages before the images could be received into evidence. The court overruled the objection but noted that, upon the return of a guilty verdict, Dewitt could raise the issue in a new motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29.

After the jury returned its verdict, the district court denied Dewitt's Rule 29 motion. It rejected the argument that the two images were such a close call to require expert testimony to establish the subjects' status as minors. From his own review of the images, the district judge concluded that the appearance of the undeveloped girls—who had "narrow shoulders and thin hips and thighs"—allowed non-experts to determine they were younger than 18. As to the video, the judge added that the jury "had the added benefit of watching [the girl's] immature demeanor and hearing her child-like voice." The court therefore determined that sufficient evidence supported

the verdict on the distribution charge because a rational jury could find beyond a reasonable doubt that the two images depicted girls under 18.

**II**

A

In reviewing the denial of the Rule 29 motion for judgment of acquittal, we apply the same standard as the district court. The overarching question is whether there was sufficient evidence to support the guilty verdict. See *United States v. Khilchenko*, 324 F.3d 917, 921 (7th Cir. 2003). We "consider the evidence in the light most favorable to the Government," and will reverse "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Blassingame,* 197 F.3d 271, 284 (7th Cir. 1999).

We have avoided requiring expert testimony in child pornography cases to establish an unidentified individual's status as a minor. We agree with other circuits that answering whether expert testimony is needed "must be determined on a case by case basis." *United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999). In some cases, the question may be difficult and all but require the government to present expert evidence as part of carrying its burden of proving age beyond a reasonable doubt. See *id.*

In many cases, however, the fact that the unidentified subject is a child will be obvious from appearance. Expert testimony is unnecessary—and may even be properly excluded—if people "of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or

peculiar training, experience, or observation in respect of the subject under investigation." *Salem v. U.S. Lines Co.,* 370 U.S. 31, 35 (1962); see also *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864 (7th Cir. 2010). If the matter is within the jurors' understanding, the expert testimony is not "specialized knowledge" that "will help the trier of fact," as required by Federal Rule of Evidence 702.

These principles apply with full force in child pornography cases. Jurors are capable of drawing on their own perceptions to determine a subject's age because these types of assessments are "regularly made in everyday life." *United States v. Batchu*, 724 F.3d 1, 8 (1st Cir. 2013) (explaining that expert testimony was unnecessary because a "multiplicity of indicators"—such as the victim's gait, conversation with the defendant, voice, and general demeanor—would indicate her age to a layperson); see also *United States v. Haymond*, 672 F.3d 948, 960 (10th Cir. 2012) (holding that expert testimony was unnecessary because the photographs were known child victims but also explaining that jurors at times can determine age for themselves "particularly when the subjects [are] sufficiently young").

We have reached the same conclusion in similar circumstances. In *United States v. Lacey*, we held that "expert evidence is not required to prove the reality of children portrayed in pornographic images." 569 F.3d 319, 324–25 (7th Cir. 2009). As the First Circuit put the same point, the fact that experts are not required for the "more technical subject of whether a sexually explicit image depicts a real or computer-generated child," "suggests that we should similarly not require the government to provide an expert witness for an

assessment [about a child's age, which is] frequently and rou-
tinely made in day-to-day experience." *Batchu*, 724 F.3d at 8.

Beyond appearance, the factfinder may consider other
contextual factors in determining age. Those factors include a
defendant's own stated sexual preferences. Consider, for ex-
ample, the Eighth Circuit's reasoning in *United States v.
O'Malley*, 854 F.2d 1085 (8th Cir. 1988). The evidence there
showed that the defendant described the girls in the pictures
he unwittingly sent to a postal inspector as 12 years old and
younger than nine. See *id.* at 1086. The girl in one photo wore
braces and the other "appeared diminutive in all her bodily
proportions." *Id.* at 1087 n.3. The defendant's own descrip-
tion, combined with what the pictures themselves showed,
was sufficient to sustain a child pornography conviction. *Id.;*
accord *United States v. Broyles*, 37 F.3d 1314, 1317, 1319 (8th
Cir. 1994) (affirming a jury's verdict in part because the de-
fendant's expressed preference for "young white females be-
tween the ages of 11 and 15, just developing and not totally
developed" supported the finding that a video of unidentified
individuals fit that description and showed the subjects to be
minors).

B

The trial record contained ample evidence to support the
jury's decision to convict Dewitt on the distribution count. Ju-
rors bring to their service the totality of lived experiences not
only as adults (and, more specifically, as parents, guardians,
grandparents, aunts, and uncles), but also as once themselves
children too. All of these experiences instill the knowledge,
judgment, and common sense requisite to tell the difference
between a young child, a girl in the first stages of puberty, and
someone who has reached the age of 18. That a particular

individual has entered puberty informs the inquiry but does not automatically make expert testimony required as part of determining age. Whether a jury can answer the question must be assessed on a case-by-case basis, and here the district court got it right in concluding that the answer was sufficiently clear to eliminate any need for expert testimony.

Recall that the district judge himself examined each image. He considered the appearance of the girls in the photograph and video in deciding that the jury could make the age finding on its own. Even more specifically, the judge determined that—based on physical appearances alone—the "jury would be able to determine based on routine experience that these undeveloped slender girls (with narrow shoulders and thin hips and thighs) were not as old as eighteen." *United States v. Dewitt,* No. 3:17-CR-110 JD, 2018 WL 5961723, at *3 (N.D. Ind. Nov. 14, 2018). For the video, the jury also had the opportunity to observe the girl's "immature demeanor" and hear her "child-like voice." *Id*.

There was more too. The girls' status as minors found reinforcing support in contextual evidence revealing Dewitt's sexual preferences. In his online chats with Officer Palchak, Dewitt stated that he liked "development age," barely post-pubescent girls. In terms unnecessary to recount here, he then described in graphic detail his physical preferences, which corresponded sufficiently with that age and the appearance of the girls in the images. What is more, the sexual acts performed by the girl in the video were the same ones Dewitt urged Officer Palchak to have his fictitious nine-year-old daughter perform.

All of this left the jury and the district court—and now us—of the clear view that expert testimony was not necessary:

the girls appeared far from 18 and Dewitt's own statements allowed a jury finding that each child fit his preferences.

### III

We also need to address Dewitt's contention that a gap in the government's showing of his cell phone's chain of custody meant that the district court should have never admitted the images found on it into evidence at trial. What happened is straightforward. Upon Dewitt's arrest, FBI Agent Richard Davies turned the phone off, took it to his office, and put it on his desk. While not itself locked, Agent Davies's office is part of a larger FBI office accessible to only five or six employees with the requisite personal ID card and access code. Agent Davies was the last to leave the night of Dewitt's arrest and the first to arrive the next morning. Upon returning he found the phone exactly as he had left it. At that point Agent Davies logged the phone into evidence and sent it to an FBI forensic facility.

To be admissible, "the physical exhibit being offered [must be] in substantially the same condition as when the crime was committed." *United States v. Moore*, 425 F.3d 1061, 1071 (7th Cir. 2005). The chain of custody does not need to be perfect. Rather, the government needs to show that it took "reasonable precautions" to preserve the evidence—a standard that does not require excluding all possibilities of tampering. *Id*. Absent any evidence to the contrary, when property is in police custody a presumption arises that the evidence has not been tampered with. See *United States v. Tatum*, 548 F.3d 584, 587 (7th Cir. 2008). Any gaps in the chain of custody or speculative claims of tampering go to the weight of the evidence rather than its admissibility. See *United States v. Lee*, 502 F.3d 691, 697 (7th Cir. 2007).

We see no abuse of discretion in the district court's admission of Dewitt's cell phone at trial. All agree the chain of custody was imperfect, as Officer Davies left the phone on his desk overnight. But perfection is not the proper measure. The imperfection the law tolerates here comes from the fact that, at all times, the phone remained secured within the FBI's office. In these circumstances, the law affords a presumption that the integrity of the phone remained intact, that nobody tampered with it. Dewitt offers no evidence to the contrary and any speculation could have been considered by the jury in assigning weight to the evidence.

## IV

Finally, we reach Dewitt's challenge to his sentence. The district court determined that Dewitt's advisory guidelines range was 70 years' imprisonment. At sentencing, the court considered Dewitt's mental infirmities, abusive childhood, and other mitigating factors. It also noted that below-guidelines sentences are not uncommon for child pornography offenders. The court found that these circumstances warranted a downward variance and in the end sentenced Dewitt to 30 years.

We employ a two-step process in reviewing a sentence. We first review the sentence for procedural soundness and, if we find no error, assess its substantive reasonableness. See *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Here Dewitt challenged only the substantive reasonableness of his 30-year term of imprisonment. The law is clear, however, that "[a] below-guidelines sentence is 'presumptively reasonable against an attack by a defendant claiming that the sentence is too high.'" *United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018).

We see no infirmity with Dewitt's sentence. Contrary to Dewitt's reading of the sentencing transcript, it is clear the district judge gave careful and sufficient mitigating consideration to Dewitt's mental infirmities. And the ultimate sentence of 30 years was less than half the low-end of the advisory range. We have never held a below-guidelines sentence to be unreasonably high. See *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below range sentences that would be unreasonably high."). This case does not warrant being the first.

For these reasons, we AFFIRM.