In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1653

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON T. GMOSER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 14-cr-20048-JES — **James E. Shadid**, *Judge.*

ARGUED DECEMBER 2, 2021 — DECIDED APRIL 4, 2022

Before FLAUM, EASTERBROOK, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Jason Gmoser ran an operation that distributed child pornography over the dark web. The nature and gravity of this offense are not disputed. A jury rejected Gmoser's insanity defense and convicted him of engaging in a child-exploitation enterprise. 18 U.S.C. §2252A(g). After a remand so that lesser included offenses could be merged into the principal conviction, Gmoser was sentenced to 30 years' imprisonment. He does not deny the sufficiency

of the evidence, which need not be described. Nor does he deny that 30 years is a proper sentence for his crime. He does raise two evidentiary arguments.

One is that Dr. Bennett Leventhal, a psychiatrist who testified for the prosecution during its rebuttal case, should not have been allowed to do so because he did not personally examine Gmoser. He asserts that psychiatric experts cannot testify about people they have not examined. That is not what Fed. R. Evid. 703 says. It permits experts to testify based "on facts or data in the case that the expert has been made aware of *or* personally observed." (Emphasis added.) They must rely on the kinds of information that "experts in the particular field would reasonably rely on" (*ibid*.). By failing to proffer any evidence that experts in the mental-health field need to question their subjects personally, Gmoser forfeited an essential issue under Rule 703.

Leventhal reviewed the reports prepared by two other psychiatrists, records from a mental hospital that had examined Gmoser in depth, and other information. Gmoser asserts that the Due Process Clause of the Fifth Amendment creates a personal-interview requirement. We grant that the Constitution requires prosecutors to produce reliable evidence, but it does not say what makes expert testimony reliable. Gmoser does not cite any decision that establishes a constitutional must-interview rule. Nor can Gmoser get mileage from the standards of a professional association to which Leventhal belongs. Those standards could have been brought to the district court's attention as part of the Rule 703 inquiry, but that was not done. (For what it is worth, we do not see a sound basis for Gmoser's current accusation that Leventhal behaved unethically by his profession's standards.)

The second argument is that the district judge should not have admitted evidence supplied by Carnegie Mellon University in response to a subpoena issued by the FBI. The University provided records to help the FBI determine who was managing the computer that distributed child pornography. According to Gmoser, the subpoena did not satisfy 18 U.S.C. §3486 because it was not signed by an authorized person. He insists that, although a "Senior Supervisory Special Agent" of the FBI may approve such a subpoena, K. Paul Cha, who approved this one, was a "Supervisory Special Agent" without the "Senior" tag. If this is so, perhaps the University could have moved to quash the subpoena, but it did not. It produced the evidence without protest. Gmoser is not entitled to enforce the University's rights—and he did not try to do so in the district court. This argument, too, has been forfeited.

Gmoser's principal argument is that either the Due Process Clause or 28 U.S.C. §455(a) entitles him to a new trial before a different district judge. Judge Colin Bruce conducted the trial. While the case was on remand to deal with the lesser included offenses, the private bar learned that for several years Judge Bruce had been sending emails to the United States Attorney's office without copying counsel for the defense. Judge Bruce had worked in the office of the United States Attorney for the Central District of Illinois for more than 20 years before his appointment to the bench, and after that appointment he failed to take steps essential to ensure that all case-related communications were in the public record. Resolving complaints under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351–64, the Judicial Council of the Seventh Circuit adopted the report of a Special Committee finding that Judge Bruce had behaved unethically and needed to take some time off from criminal prosecutions.

Three of our decisions have addressed the fallout of Judge Bruce's *ex parte* communications. See *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019); *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020); *United States v. Orr*, 969 F.3d 732 (7th Cir. 2020). These opinions detail Judge Bruce's conduct and the Judicial Council's response; we need not recapitulate.

*Atwood* and *Orr* hold that, when a district judge laboring under an ethical problem makes discretionary decisions that materially affect the conviction or sentence, we will remand so that a different judge can redo the proceedings. For the reasons we have explained already, Gmoser's situation does not fit that rule. He contests two evidentiary matters but did not develop either sufficiently in the district court to require a discretionary choice by the judge. And Gmoser has not pointed to any other discretionary decision that a different trial judge might have handled differently.

*Williams* holds that, in the absence of a contestable discretionary choice, the district court's judgment stands. *Williams* observes that both the Constitution and §455 require new proceedings when the judge acted under an actual conflict of interest, but not just because *ex parte* communications present the appearance of a conflict. Circumstances showing a serious potential for bias may require a judge's disqualification, see *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), but lesser degrees of bad appearances do not. See, e.g., *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc). *Williams* holds that the sort of *ex parte* communications in which Judge Bruce engaged are on the less serious side of that line. In this case, as in *Williams*, sentencing was transferred from Judge Bruce to a different judge; and in

this case, as in *Williams*, the jury's verdict cannot plausibly be attributed to any questionable decision by Judge Bruce.

Nonetheless, Gmoser maintains, his situation differs from *Williams* because Judge Bruce sent an *ex parte* communication during his trial, something that did not happen during Williams's trial. District Judge Shadid, to whom this case was transferred after our remand, explained the circumstances:

> On February 1, 2016, shortly before Gmoser's trial was to begin, AUSA Peirson sent an email to Judge Bruce's chambers email, chambers' staff, defense counsel, and Peirson's co-counsel. Therein, Peirson directed Judge Bruce to trial documents previously filed on the docket by the United States. Her email concluded by apologizing to Judge Bruce "for any confusion." Peirson's email was in response to Judge Bruce's confusion at the final pretrial conference held earlier that day, where Judge Bruce questioned whether the United States had filed all the trial documents required under his standing [discovery] order. Peirson's email provided citations to the document numbers and identified the relevant documents for Judge Bruce. In an email addressed to AUSA Peirson only, Judge Bruce replied, "My bad. You're doing fine. Let's get this thing done." AUSA Peirson forwarded the court's email to her co-counsel, Trial Attorney Keith Becker. However, neither government attorney forwarded a copy to defense counsel. Judge Bruce's reply email was not disclosed to defense counsel until September 19, 2018, after the United States Attorney's Office had completed its search for potential ex parte communications with Judge Bruce.

2020 U.S. Dist. LEXIS 147732 at *4–5 (C.D. Ill. Aug. 17, 2020) (citations to the record omitted). After considering evidence submitted by both parties, Judge Shadid concluded that this single *ex parte* email does not evince any actual or potential bias. He denied Gmoser's motion under Fed. R. Crim. P. 33 seeking a new trial and later resentenced Gmoser to 360 months' imprisonment.

We appreciate that "Let's get this thing done" could be understood as equivalent to "Let's get a conviction." If so read, the email would show bias requiring a new trial. But it also could be read as equivalent to "Let's get this trial under way, now that you have shown compliance with my discovery order." If that's the right reading, there is no appearance of bias. Which reading is correct is a question of fact, as Gmoser's lawyer conceded at oral argument. And Judge Shadid made the necessary finding when concluding that, in context, the email has the latter meaning. That finding is not clearly erroneous and so disposes of this appeal.

Judge Bruce's thoughtless *ex parte* emails have caused needless problems for litigants and the judiciary as a whole. But as *Williams* holds, and this case illustrates, they do not always lead to new trials. Gmoser's trial was not even arguably affected by any improper communication or any material discretionary decision. As Gmoser's sentence was imposed by a different judge, we do not see a good reason to start from scratch.

AFFIRMED