In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1812

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

QUINCY CAMPBELL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:17-cr-20040-CSB-EIL-1 — **Colin S. Bruce**, *Judge.*

ARGUED DECEMBER 3, 2021 — DECIDED JUNE 27, 2022

Before ROVNER, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge*. Defendant-appellant Quincy Campbell was convicted on four counts of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He appeals his sentence of 120 months in prison followed by 72 months of supervised release.

An important issue in sentencing was whether Campbell should be sentenced as a career offender under the Sentencing Guidelines. The district court ultimately determined that Campbell should be deemed a career offender. He qualified only because the district court determined that certain uncharged drug sales beginning in the summer of 2016 were relevant conduct. Including these transactions as relevant conduct stretched the beginning of the offenses of conviction back far enough in time so that Campbell's 1998 conviction for aggravated battery would count as a predicate offense under the career offender Guideline. When combined with another 2013 drug conviction, the 1998 conviction qualified Campbell as a career offender and called for a much higher offense level under the Guidelines.

On appeal, Campbell argues the district court made a procedural error by including the 2016 drug sales as relevant conduct. He also challenges the substantive reasonableness of his sentence. We affirm. The district court properly calculated Campbell's range under the Guidelines, but also recognized the narrow margin by which he qualified as a career offender. It was appropriate in this case for the court to rely primarily on its consideration of the statutory sentencing factors under 18 U.S.C. § 3553(a) to decide on an appropriate sentence.[1]

---

[1] Campbell's sentencing took place after Judge Bruce had completed a suspension from handling cases involving the U.S. Attorney's Office for the Central District of Illinois. See *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf; see also *United States v. Gmoser*, 30 F.4th 646 (7th Cir. 2022).

I. *Factual and Legal Background*

Campbell has a long history with the criminal justice system. In 1998, he pled guilty in state court to escape and felony aggravated battery. He was released with his sentence discharged in November 2001. He was later convicted in state court on felony drug offenses, including a February 2006 conviction for possessing a controlled substance with intent to deliver and a February 2013 conviction for unlawful delivery of a controlled substance within 1,000 feet of church property.[2]

Campbell was arrested in July 2017 and charged in this federal case with four counts of distributing controlled substances in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) after making several sales of crack cocaine and heroin to a confidential source. Campbell pled guilty on all counts and the court accepted his plea. In preparing for sentencing, the probation officer eventually filed four different presentence investigation reports (PSRs). The first three versions of the report all found that Campbell was a career offender under § 4B1.1 of the Guidelines in part because he had two prior qualifying felony convictions for a controlled substance offense—his February 2006 and February 2013 convictions.

A defendant qualifies as a career offender if (i) he was at least eighteen when he committed the offense of conviction; (ii) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (iii) the

---

[2] Campbell had other prior convictions that are not relevant here. The district court accepted without comment the probation office's recommendation that his other convictions did not qualify as predicate offenses for career offender status. The parties do not dispute this matter.

defendant has at least two prior felony convictions for a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). A prior felony conviction counts as a predicate for career offender status only if the sentence exceeded one year and one month and was either (i) imposed within fifteen years of the commencement of the offense of conviction; or (ii) resulted in the defendant being incarcerated during any part of the fifteen years prior to the commencement of the offense of conviction. See § 4A1.2(e)(1).

Status as a career offender can have a significant impact on a defendant's sentencing range under the Guidelines. That impact was unusually dramatic in this case. As a career offender, Campbell's total offense level was 31, his criminal history category was VI, and the range for his sentence was 188 to 235 months. If he were not a career offender, his total offense level would be 10, his criminal history category would drop from VI to V, and the range for his sentence would be 21 to 27 months.

Campbell objected to being sentenced as a career offender. After the third PSR was issued, he convinced an Illinois state court to vacate his 2006 conviction for possessing a controlled substance with intent to deliver. The U.S. Probation Office then issued a fourth and final PSR, which found that Campbell was *not* a career offender because his newly vacated 2006 conviction could not qualify as a predicate offense. On this basis, the fourth PSR listed his guideline range as 21 to 27 months in prison.

The government challenged the fourth PSR's calculation and argued that Campbell still qualified as a career offender. The government relied on evidence that Campbell had made additional drug sales before November 2016. Counting that

conduct as relevant under the Guidelines, the offenses of conviction would have commenced within 15 years of Campbell's November 2001 release from prison for the 1998 aggravated battery conviction, meaning it would count toward career offender status.

At the first sentencing hearing, the district court heard testimony addressing these questions. The court credited testimony from Emily McGrath, who claimed she had purchased drugs from Campbell regularly starting in early summer 2016 and that she had made about ten deliveries of drugs for Campbell in 2017. At a second hearing, the court heard evidence in mitigation from Campbell's friends and family.

At a third and final hearing, the court announced that it was crediting McGrath's testimony and that Campbell's 2016 drug sales counted as relevant conduct. Based on those findings, the court held that Campbell qualified as a career offender, giving him the higher guideline range of 188 to 235 months. The court then heard final sentencing arguments from both sides and listened to Campbell's allocution, in which he discussed his desire to help his community and his hopes to raise his daughter and young son.

In explaining the final sentence, the district judge noted that he was "primarily applying the factors as set forth in 3553(a)" to determine an appropriate sentence. He weighed each factor in turn, placing special emphasis on Campbell's history and characteristics and the need to avoid unwarranted sentencing disparities. The judge then imposed four concurrent terms of 120 months—a sentence 68 months below the bottom end of the calculated guideline range but well above the range that would apply without the career offender adjustment. The judge also imposed four concurrent six-year

terms of supervised release and added that even if his findings as to relevant conduct under the Guidelines were wrong, he would impose the same sentence.

Campbell appeals, arguing that the district court erred procedurally by finding that his relevant conduct included the 2016 sales to McGrath and erred substantively by imposing a sentence greater than necessary under the circumstances.

II. *Discussion*

We review the sentence imposed by a district court in two steps. We first review de novo for any procedural error. *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012). Next, we review the substantive reasonableness of the sentence for abuse of discretion. *United States v. Taylor*, 701 F.3d 1166, 1174 (7th Cir. 2012).

A. *The Guideline Calculation*

For a procedural challenge, we may consider "whether the sentencing judge properly calculated the guideline range, recognized that the guideline range wasn't mandatory, considered the sentencing factors in 18 U.S.C. § 3553(a), selected a sentence based on facts that weren't clearly erroneous, and explained the sentence adequately." *United States v. Annoreno*, 713 F.3d 352, 357 (7th Cir. 2013). Campbell argues that the district court erred procedurally in calculating his guideline range by incorrectly determining that his sales of heroin to McGrath starting in the summer of 2016 were relevant conduct.

There was no error. Under the Sentencing Guidelines, a sentencing court considers relevant conduct in calculating the defendant's sentencing range. See U.S.S.G. § 1B1.3. Relevant

conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Tankson*, 836 F.3d 873, 883 (7th Cir. 2016), quoting § 1B1.3(a)(1)(A) and (a)(2). Here, the court relied on Emily McGrath's testimony to find that Campbell's relevant conduct began around July 1, 2016, when the court estimated that she began to buy drugs regularly from Campbell. This is a factual finding that we review for clear error. *Tankson*, 836 F.3d at 883; see also *United States v. Ortiz*, 431 F.3d 1035, 1040–43 (7th Cir. 2005) (applying clear error standard to calculation of drug quantity based on relevant conduct).

Campbell claims these 2016 sales were not relevant conduct because (i) they were not part of the same course of conduct as the 2017 offenses of conviction; and (ii) McGrath's testimony about the sales was not credible. The principles for applying the relevant conduct provisions to Campbell's case are well established. See *Tankson*, 836 F.3d at 883. "We consider significant similarity, regularity, and temporal proximity of the uncharged conduct with the convicted offense, as well as common victims, accomplices, purpose, or *modus operandi*." *United States v. Farmer*, 543 F.3d 363, 373 (7th Cir. 2008). When the offense of conviction is the final transaction "in an unbroken series of deals regularly made," a court may find the prior transactions were part of the same course of conduct. *Id.*

As noted, Campbell's status as a career offender depends on the district court's relevant conduct finding. The finding that sales to McGrath starting in the summer of 2016 were relevant conduct was the only basis for finding that the 2017 offenses of conviction—which includes any relevant conduct,

see *Tankson*, 836 F.3d at 886, citing U.S.S.G. § 4A1.2 cmt. n.8.—occurred within fifteen years of Campbell's final day of incarceration for aggravated battery in November 2001. Without this finding, his aggravated battery conviction would be too old to count as a predicate for career offender status and he would not have the two required predicate felonies. See §§ 4A1.2(e)(1) and 4B1.1(a).

Campbell contends that his sales to McGrath in 2016 were not part of the same course of conduct as the 2017 offenses of conviction because the groups of transactions involved different parties playing different roles. Campbell notes that during the purchases McGrath described as occurring before November 2016, she was a customer and not a dealer or courier. In contrast, he argues, only in 2017 did McGrath begin to deliver drugs for him, and she was paid for those deliveries in heroin. In Campbell's view, this different role that McGrath played in the earlier transactions distinguishes them as a different course of conduct.

The district court viewed her testimony differently. The court emphasized that the conduct described by McGrath "from summer 2016 to summer 2017 is strikingly similar to the instant offense conduct." The offenses were similar, involved sales of the same drug in similar small quantities for personal use, and occurred in the same general area in Kankakee. The transactions were conducted in a similar way and were repeated and regular. Both McGrath and the confidential source to whom she delivered drugs described making purchases from Campbell at least every other day, and the string of purchases from summer 2016 through Campbell's arrest in July 2017 was unbroken.

As the district court noted, this court has upheld relevant conduct findings on similar facts before. See, e.g., *Tankson*, 836 F.3d at 883–86 (affirming finding that relevant conduct for heroin distributor included his testimony that he made 100 orders in two years for same drug with similar modus operandi); *United States v. White*, 519 F.3d 342, 347–49 (7th Cir. 2008) (affirming finding that relevant conduct included "more or less consistent" drug trafficking over nine-year period). Campbell points to minor differences between the purchases included within the district court's relevant conduct determination, but he does not show the court made a clear error.

Next, Campbell argues that the district court erred in relying on McGrath's testimony to determine relevant conduct because she was not credible. If this were so, it could be a reversible error. *United States v. Etchin*, 614 F.3d 726, 738 (7th Cir. 2010) ("a guidelines range based on false evidence can certainly constitute clear error"). However, we review deferentially a district court's decision to credit such witness testimony. E.g., *United States v. Tate*, 822 F.3d 370, 373 (7th Cir. 2016); *Etchin*, 614 F.3d at 738.

Campbell highlights discrepancies between McGrath's initial statement to a law enforcement officer and her later testimony at sentencing. He argues that she is an unreliable witness because of her personal stake in avoiding prosecution, her history of drug abuse, and her poor memory. He emphasizes that McGrath's initial statement to law enforcement indicated she purchased heroin from Campbell continuously for the two years prior to his arrest in 2017. Her testimony at sentencing, however, revealed a gap in these purchases before the summer of 2016. McGrath explained the discrepancy at sentencing by saying that, while drugs had affected her

memory, she had thought about it and provided the most ac-curate information she could. We are not persuaded that the district judge clearly erred in crediting her testimony.

As we noted in *Tate*, "drug traffickers rarely keep reliable business records," and the district court was entitled to listen to witness testimony at sentencing from a customer and to draw conclusions about drug sales based on that testimony. *Tate*, 822 F.3d at 373. The district court considered and rejected Campbell's arguments in making its credibility determina-tion. The court acknowledged that McGrath had memory is-sues related to drug use, that there were small inconsistencies between her prior statement to law enforcement and her tes-timony at sentencing, and that she testified under a use-im-munity agreement with the government. After considering these factors, the court still found her credible: "At no point during her testimony did the court perceive McGrath to be evasive, engaged in fabrication, or being anything less than truthful to the extent allowed by her memory." Nor does her cooperation agreement with the government make her testi-mony incredible as a matter of law. See *United States v. Saulter*, 60 F.3d 270, 275 (7th Cir. 1995).

The district court was in the better position to determine whether McGrath was telling the truth. Nothing that Camp-bell raises on appeal overcomes the substantial deference we give the district court's finding on credibility. See *Tate*, 822 F.3d at 373. The district court considered how personal inter-est and discrepancies in McGrath's statements affected the re-liability of her testimony and explained its reasoning when it found her credible. That finding was not clearly erroneous. E.g., *Austin*, 806 F.3d at 431 (noting that a district court may credit testimony even from a "large scale drug-dealing, paid

government informant as long as the court evaluates the evidence carefully" (internal citations and quotation marks omitted)). Accordingly, there was no clear error in the district court's relevant conduct determination, and Campbell has not shown that the district court erred by applying the career offender Guideline.

B. *Substantive Reasonableness*

Next, Campbell argues that even if there were no procedural errors, his sentence was substantively unreasonable in light of the circumstances of his case. We review under a deferential abuse-of-discretion standard the district court's decision to sentence Campbell to four concurrent terms of 120 months. *Taylor*, 701 F.3d at 1174. We do not ask what sentence we would impose; we ask whether the district judge imposed a sentence for logical reasons that are consistent with the 18 U.S.C. § 3553(a) factors. *United States v. Bonk*, 967 F.3d 643, 650 (7th Cir. 2020). In addition, the sentence here was below the calculated guideline range. We will presume such a sentence is reasonable against an attack by a defendant claiming that the sentence is too high. *United States v. Purham*, 795 F.3d 761, 765 (7th Cir. 2015).

Here, the district judge thoroughly discussed his consideration of the § 3553(a) factors and carefully explained his reasons for imposing a sentence 68 months below the bottom of the guideline range. After hearing Campbell's allocution, the district judge noted that he was "primarily applying the factors as set forth in 3553(a)" to determine an appropriate sentence rather than relying unduly on the Guidelines. He gave particular emphasis to two factors: history and characteristics of the defendant and the need to avoid unwarranted sentencing disparities. On the first factor, the judge pointed out that

Campbell had a "horrendously bad criminal history." Still, he was impressed by the statements in mitigation given by Campbell's nephew and older brother, and he called the latter "one of the best statements made by an older brother I've heard in a long time—or any witness in a long time." On balance, he found Campbell's history and characteristics "slightly weigh in favor of a lighter sentence."

The second factor, however, weighed in favor of a higher sentence. The judge was troubled by the danger of imposing a sentence so low that it might create unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. He said that he thought he could justify a sentence at the top of the guideline range under the circumstances (235 months), but he ultimately chose to impose a much lower sentence based on Campbell's history and characteristics. After weighing all the § 3553(a) factors, the judge clarified how he reached the sentence he was about to impose:

> Let me add that even if I am wrong, even if I am wrong, if all my findings as to the sentencing guidelines on relevant conduct are way off and dead wrong … , using my discretion, based upon my application of the statutory sentencing factors, I would impose the same sentence because I spent a lot of time going through those factors and thinking about them and really trying to correctly apply them, using my discretion.

The district judge's assessment of the § 3553(a) factors and his explanation of the sentencing decision were reasonable. He imposed a sentence well below the guideline range that he

thought would be "pushing the envelope of a sentencing disparity." The judge calculated the guideline range accurately but also recognized the jarring arbitrariness of the guideline calculation in this case, where a difference of five months in Campbell's release from prison in 2001 or in the precise scope of his relevant conduct in 2016 and 2017 made the difference between a total offense level of 10 v. 31, with a roughly nine-fold difference in the recommended prison sentence. In particular, the judge noted the "thin reed" by which Campbell qualified as a career offender and discounted his career offender status when considering factors such as § 3553(a)(2)(A), the need for the sentence to reflect the seriousness of the offense.

At sentencing, district judges "have discretion over how much weight to give a particular factor. Although the weighting must fall 'within the bounds of reason,' those bounds 'are wide.'" *United States v. Reibel*, 688 F.3d 868, 872 (7th Cir. 2012), quoting *United States v. Busara*, 551 F.3d 669, 674 (7th Cir. 2008). Here, the sentencing judge's assessment of the § 3553(a) factors and his explanation of the sentence fell well within the bounds of reasonableness. We find no abuse of discretion in the final decision about Campbell's sentence.

The underlying problem here is that guideline calculations can generate a sentencing cliff for defendants like Campbell, who may qualify as career offenders, or not, by a thin and hotly contested margin. Campbell's range under the Guidelines was either 188 to 235 months as a career offender or just 21 to 27 months without that enhancement. The Guidelines can provide useful guidance in the difficult task of sentencing, helping to focus on relevant factors and encouraging relatively consistent treatment of similarly situated defendants.

But in many cases the Guidelines can produce seemingly arbitrary results. A judge considering a large swing based on such potentially arbitrary factors as the timing of uncharged but relevant conduct, as in this case, or arbitrary applications of the categorical approach to a prior conviction, would do well to ask why the disputed guideline issue should make a difference in the ultimate decision. See *United States v. Marks*, 864 F.3d 575, 582 (7th Cir. 2017); see also *United States v. Dixon*, 27 F.4th 568, 571 n.1 (7th Cir. 2022) ("Query how courts would apply the 'arbitrary or capricious' standard of administrative law to an agency's decision based on the kind of logic that courts must use under the categorical method, where the actual facts of a defendant's earlier crime do not matter and hypothetical questions can be decisive.").

The district judge recognized here that rigid adherence to the Guidelines in this case would be unwise. After making the required guideline calculations, he gave a sentence based primarily on his thoughtful consideration of the sentencing factors in § 3553(a). Campbell's case illustrates well why it is a reversible error for a sentencing judge to presume that a within-Guidelines sentence is reasonable without considering the § 3553(a) factors. See *Gall v. United States*, 552 U.S. 38, 49–50 (2007) ("[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable."); cf. *United States v. Horton*, 770 F.3d 582, 585 (7th Cir. 2014) (noting only method for defendant to rebut presumption that within-Guidelines sentence is reasonable is via showing under § 3553(a) factors).

Long before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Commission recognized that wooden application of the Guidelines could sometimes produce arbitrary results. Even as adopted in their original form in 1987, the Guidelines encouraged sentencing departures for over- or under-representative criminal history. See U.S.S.G. § 4A1.3 (1987). That encouragement remains in place in the version of § 4A1.3 in effect in 2022. After *Booker*, we have encouraged district judges to do just what the judge did here by concentrating on careful consideration of the § 3553(a) factors.

The district court's judgment is AFFIRMED.