In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 25-1021 & 24-2887

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/Cross-Appellant,*

*v.*

BRIAN JOHNSON,

*Defendant-Appellant/Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-cr-00405 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED MAY 14, 2026 — DECIDED JUNE 26, 2026

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Brian Johnson fraudulently prom-
ised at least 128 women future compensation and lucrative
work opportunities. His lies tricked these women into meet-
ing with him, posing for nude photographs, and having sex
with him. One of his victims was underage. Based on this con-
duct, a jury convicted Johnson of seven sex trafficking counts
and three child pornography counts. After trial, Johnson
moved for acquittal, which the district court denied as to the

sex trafficking convictions but granted as to the child pornography convictions. It then sentenced Johnson to 420 months' imprisonment. Johnson and the government filed cross-appeals from the district court's decision, and Johnson also appeals his sentence. We affirm the district court's decision denying Johnson's motion for acquittal as to the sex trafficking convictions and reverse its decision granting his motion for acquittal as to the child pornography convictions. Accordingly, we remand so the district court may conduct a full resentencing consistent with our decision.

## I. Background

In 2019, a grand jury indicted Brian Johnson on sex trafficking and child pornography charges. 18 U.S.C. §§ 1591, 2252A. The charges stemmed from a yearslong scheme Johnson began in 2010 in which he posed as the CEO and several employees of a fake adult film, photography, and art studio. Johnson posted advertisements on Craigslist, soliciting adult women to "audition" for opportunities to appear in adult films. When women responded to his advertisements, Johnson communicated with them as both the male CEO of the company and separately as a fake female employee. Through these communications, Johnson would require the women to "audition" by meeting with him in person. In return, he promised financial compensation, long-term lucrative modeling contracts, exposure to adult film companies, and other work opportunities.

At these "auditions," Johnson gave the women alcohol, encouraged them to "follow his lead," took nude photographs and videos of them, and had sex with them. Following the "auditions," Johnson would tell the women he had submitted their photographs and videos to a distributor for review.

Later, he would inform them that the distributor had "rejected" their work and that they would have to re-shoot the photographs and videos with him. If they refused, he threatened to post their photographs and videos on the internet; and, if they confronted Johnson, he denied wrongdoing, threatened them, and cut contact.

This was all a lie. In fact, Johnson's entire operation was fraudulent. There were no future payments, no potential work opportunities, and no modeling contracts. Instead, Johnson kept the photographs he took for his "pleasure," posted them on the internet, and continued to email and harass his victims.

One of Johnson's victims, "Jami,"[1] was sixteen when she and Johnson met. After seeing Johnson's online advertisement, Jami emailed Johnson under the name "Mari." She expressed interest in the work opportunities and told Johnson she was twenty-three years old. Johnson emailed Jami, posing as a fake female employee at his fake company, informing Jami that she would need to interview with "David Burton"—another of Johnson's aliases. Then, as Burton, Johnson emailed Jami with information about the possible financial opportunity she could receive and explained that she would have to "audition" with him. Johnson also encouraged Jami to send explicit photographs of herself, which she did.

Johnson and Jami met several times. During these meetings he touched her breasts, kissed her neck, showed her pornography, and took nude photographs of her. In between meetings, Johnson, posing as the female employee, emailed

---

[1] "Jami" is this victim's pseudonym, as used at trial.

Jami, encouraging her to engage in various sexual acts with
Johnson. At later meetings, Johnson instructed Jami to per-
form various sex acts on video, attempted anal sex with her,
and performed simulated sex and oral sex on her. And, after
each meeting, Johnson, as Burton, would tell Jami his "distrib-
utor" was "unhappy" and that if she reshot the photographs
and videos, she would be compensated.

Jami started to question the truth of Johnson's promises,
and in response Johnson told Jami he was negotiating the sale
of her photographs to pay for the time Jami had "wasted." Af-
ter Johnson threatened several times to post the nude photo-
graphs of Jami online, Jami informed Johnson she was actu-
ally sixteen years old and asked him to delete the photo-
graphs. Johnson disclaimed believing Jami, telling her to
"prove" she was underage. Jami again emailed Johnson that
she was underage, and, eventually sent Johnson a photograph
of her driver's license, which showed she was sixteen at the
time the two had met and Johnson had taken the nude photo-
graphs of her.

Johnson, however, continued to claim he did not believe
Jami was underage. And, for years after, he continued to post
Jami's underage photographs online, including when he
posted the nude images of Jami on his Tumblr account, with
the caption "[t]his is 18-year-old Mary," and when he sent
Jami an anonymous email with a link to a website that had the
nude photographs of her and a caption advertising "teen"
girls. Later, as part of the government's investigation into
Johnson, the FBI searched his house and found the nude im-
ages of Jami.

The United States first charged Johnson with four sex traf-
ficking counts under § 1591(a)(1) and (b)(1), one count of

knowingly transporting and causing to be transported child pornography, § 2252A(a)(1), and one count of possessing child pornography, § 2252A(a)(5)(B). In 2022, by superseding indictment, the government added one more transportation of child pornography count and three additional sex trafficking counts (for a total of seven sex trafficking counts, reflecting seven of his victims). In 2023, while on a three-hour furlough granted by the district court to attend his mother's funeral, Johnson escaped and law enforcement arrested him three days later. When they arrested him, law enforcement officials found more child pornography in Johnson's possession—specifically, the nude photographs of Jami. Following his escape and re-arrest, a second superseding indictment added one more possession of child pornography count and a count of escape, 18 U.S.C. §§ 751(a), 4082(a), 3147(1).

In April 2024, Johnson pleaded guilty to the escape count and the final possession of child pornography count. He proceeded to trial on the remaining ten counts. Over the course of the nine-day trial, the government called seven of Johnson's victims to testify. Each described Johnson's scheme, his promises of future financial compensation and work opportunities, their meetings with him, and the sexual assault they experienced during these meetings. And, they all testified both that it was Johnson's promises of financial compensation and lucrative work opportunities that caused them to meet with him, and that he never paid them, nor did he deliver on his promises of finding work opportunities. Jami testified to her encounters with Johnson, explaining that she eventually told Johnson she was underage and sent him a photograph of her driver's license. At the end of trial, the jury convicted Johnson on all ten counts.

Johnson moved for acquittal and for a new trial, which the district court granted as to his child pornography convictions and denied as to his sex trafficking convictions. The district court then sentenced Johnson to 420 months' imprisonment, a sentence within the applicable Guidelines range of 360 months to life. When sentencing Johnson, the court considered the 18 U.S.C. § 3553(a) factors, and pointed to the seriousness of his conduct, the impact his crimes had on his victims, the fraudulent nature of his promises, and the need for deterrence and incapacitation, particularly given Johnson's escape.

Johnson and the government cross-appeal.

## II. Discussion

Johnson's appeal challenges both the district court's denial of his motion for acquittal as to the sex trafficking convictions and the district court's 420 month sentence. The government's cross-appeal challenges the district court's grant of Johnson's motion for acquittal as to the child pornography convictions. We start with the issues raised by Johnson's appeal, then turn to the government's cross-appeal.

### A. Sex Trafficking Convictions

We review de novo the district court's denial of Johnson's motion for acquittal, *United States v. Courtright*, 155 F.4th 941, 947 (7th Cir. 2025), and ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. Hernandez*, 952 F.3d 856, 859 (7th Cir. 2020). "[P]ractically speaking, … the standard of review is that for sufficiency of the evidence." *United States v. Peterson*, 823 F.3d 1113, 1120 (7th Cir. 2016). When reviewing a challenge based on the sufficiency of the evidence, we take

the evidence in the light most favorable to the government, *United States v. Watkins*, 107 F.4th 607, 626 (7th Cir. 2024), and "overturn a jury verdict … only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt," *United States v. Beechler*, 68 F.4th 358, 368 (7th Cir. 2023) (citation modified).

The government charged Johnson with "[s]ex trafficking … by force, fraud, or coercion." 18 U.S.C. § 1591. Section 1591(a), in relevant part, provides:

> Whoever knowingly… in or affecting interstate or foreign commerce, … entices … a person … knowing … that … fraud … will be used to cause the person to engage in a commercial sex act … shall be punished as provided in subsection (b).

Section 1591(b)(1) sets out a mandatory fifteen-year minimum sentence "if the offense was effected by means of … fraud." Section 1591(e)(3) defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

Johnson's appeal turns on the definition of a commercial sex act and, specifically, whether his fraudulent promises of future compensation and work opportunities satisfy § 1591(e)(3)'s requirement that "anything of value" was "given to or received by any person." Johnson concedes that he "enticed" his victims and that he used "fraud," but disputes that the government proved the existence of "commercial sex act[s]," contending his fraudulent promises cannot be "things of value." Johnson questions: How could he "know" his victims would engage in "commercial sex acts" if he knew

his promises of future compensation and work opportunities were false and, thus, valueless? In other words, while he and his victims engaged in sex acts, he contends they were not "commercial" because he never gave "anything of value" nor did his victims receive "anything of value."

The problem for Johnson is the text of § 1591 does not limit its reach in this way. Section 1591(e)(3)'s definition of a "commercial sex act" is broad: "[A]ny sex act, on account of which anything of value is given to or received by any person." Johnson's argument requires accepting that we must examine whether he gave or whether his victims received "anything of value" from his perspective—i.e., only if he believed his promises had value. But § 1591(e)(3) does not address from whose perspective we determine whether those promises had "value." And, that § 1591(e)(3) contemplates both whether "anything of value" is "given to" or "received by" "any person" suggests a more expansive view. Even if Johnson knew his promises were false, each one of his victims testified they believed his promises to be true. From his victims' perspectives, they "received" a "thing of value"—the promises of future compensation and work opportunities.

This understanding of whether something has "value" for purposes of § 1591 accords with how other courts approach this issue. The Second Circuit, for example, "interpret[s] the word 'value' to refer to a subjective, rather than objective, concept," and has explained that "the word 'value' … focus[es] … on the value which the recipient subjectively attaches to what is … received." *United States v. Raniere*, 55 F.4th 354, 361–62 (2d Cir. 2022) (citation modified); *see also United States v. Cook*, 782 F.3d 983, 988–89 (8th Cir. 2015); *cf. United States v. Petrovic*, 701 F.3d 849, 858 (8th Cir. 2012) (citing *United States*

*v. Gorman*, 807 F.2d 1299, 1305 (6th Cir. 1986)). While Johnson may have known his promises were empty, each one of his victims testified that but for his promises they would not have met with him, allowed him to take nude photographs of them, or had sex with him. Evidently, each one of his victims "subjectively attache[d]" value to his false promises.

Our approach to § 1591(a) as a whole bolsters this conclusion. We have said that the "logical reading of the phrase 'knowing … the person … will be caused to engage in a commercial sex act' is that it describes the acts that the defendant intends to take—that is, that he means to 'cause' [his victims] to engage in commercial sex acts. That is the interpretation other circuits have adopted; they have concluded that the statute uses the future tense to describe the defendant's plan for the victim at the time he recruits her." *United States v. Wearing*, 865 F.3d 553, 556 (7th Cir. 2017) (quoting § 1591 and collecting cases). Here, the government presented evidence that Johnson posted his false advertisements online, each victim saw those advertisements, each victim believed those advertisements were true, and each victim met with Johnson only because of his promises. On these facts, a jury could reasonably conclude that the government proved the sex acts were "commercial" under § 1591(e)(3). Johnson knew both that his countless victims would take his fraudulent promises as true and that his victims would see those promises as a "thing of value" received in exchange for sex. Johnson's promises may have been false, but his "plan for [his] victim[s] at the time he [enticed them]," *id.*, was for them to take his promises as true and valuable—indeed, valuable enough to have sex with him.

Johnson warns that we would broaden the statute's reach beyond Congress's intent by affirming his convictions.

Perhaps there are other cases, with the facts Johnson raises in his briefs, where the government would not be able to satisfy the many elements of sex trafficking. But those cases are not this case, and we do not need to go beyond the facts before us to affirm his convictions. Johnson's entire operation was fraudulent. He knew his "fraud" would cause his significant number of victims to engage in commercial sex acts as his victims subjectively believed they had received a "thing of value" in the form of his promises of future compensation. Congress wrote § 1591 broadly and a jury could conclude that the facts the government established here satisfy its elements. That is enough to affirm Johnson's convictions.

**B. Sentencing**

Next, we turn to Johnson's substantive reasonableness challenge to the district court's sentence, which we review for abuse of discretion.[2] *Gall v. United States*, 552 U.S. 38, 51 (2007). "[S]ubstantive reasonableness occupies a range, not a point, and … the sentencing judge is in the best position to apply the § 3553(a) factors to the individual defendant." *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021) (quoting *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015)). When a defendant challenges the substantive reasonableness of his sentence, "[w]e do not ask what sentence we would impose; we ask whether the district judge imposed a sentence for logical reasons that are consistent with the 18 U.S.C. § 3553(a) factors."

---

[2] At times in his opening brief, Johnson suggests the district court also procedurally erred in imposing the sentence. But Johnson backed away from those arguments on reply, explaining his "primary challenge" is one of "substantive error." At oral argument, counsel clarified Johnson is only advancing his substantive challenge.

*United States v. Campbell*, 37 F.4th 1345, 1352 (7th Cir. 2022). "[W]e will 'uphold a sentence so long as the judge offers an adequate statement of h[er] reasons consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a).'" *United States v. Major*, 33 F.4th 370, 384–85 (7th Cir. 2022) (quoting *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019)). And we "presume that a within-guidelines sentence is reasonable." *Id.* at 379 (citation modified).

The 420 month sentence the district court imposed was substantively reasonable. Putting aside that the sentence is presumptively reasonable because the district court sentenced Johnson to the low end of the applicable Guidelines range, the district court more than satisfied the burden § 3553(a) imposes. It weighed the seriousness of Johnson's crimes, the need for the punishment to reflect the impact of his conduct on his victims, the need for deterrence, and the need to incapacitate him, particularly given his escape. This reasoning accounted for many of the § 3553(a) factors and certainly reflected "an adequate statement" of the district court's reasons for the sentence it imposed. *Id.*

The district court's brief comparison of Johnson's sex trafficking crimes to prostitution at sentencing did not render its sentence unreasonable. First, that comparison was not inappropriate and seemingly went to the district court's consideration of the seriousness of Johnson's conduct. Second, nothing obligated the district court to also consider that Johnson's conduct was less egregious than "typical" sex trafficking cases, assuming, as Johnson suggests, that is true. Third, the district court still sentenced Johnson to a within-Guidelines sentence and at the lower end of the applicable range. Our review is deferential and asks only whether the district court's

reasoning comported with § 3553(a). *See id.* at 379, 384–85; *Campbell*, 37 F.4th at 1352. Reviewing the sentencing transcript, we have no concerns the district court departed from § 3553(a) by comparing Johnson's crimes to prostitution.

Nor did the district court err in imposing a "de facto" life sentence. We routinely uphold such sentences where the district court properly reasoned through § 3553(a) in the sentence it imposed, as the district court did here. *See, e.g.*, *United States v. McDonald*, 981 F.3d 579, 581–82 (7th Cir. 2020); *United States v. Fitzpatrick*, 32 F.4th 644, 651–52 (7th Cir. 2022); *United States v. Volpendesto*, 746 F.3d 273, 299 (7th Cir. 2014).[3]

## C. Child Pornography Convictions

We review a grant of a judgment of acquittal de novo. *United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009); *United States v. White*, 698 F.3d 1005, 1013 (7th Cir. 2012). As with Johnson's challenge to his sex trafficking convictions, "we view the evidence in the light most favorable to the government and ask whether any rational jury could have found the essential elements of the charged crime beyond a reasonable doubt." *Presbitero*, 569 F.3d at 704.

The jury convicted Johnson of both "knowingly … transport[ing] … child pornography," § 2252A(a)(1), and "knowingly possess[ing] an image of child pornography," § 2252A(a)(5)(B). "[K]nowingly" in these subsections "extends both to the sexually explicit nature of the material and to the age of the [subjects in the images or videos]." *United*

---

[3] Because below we reverse the district court's grant of Johnson's motion for acquittal as to the child pornography charges, we ultimately vacate the sentence the district court imposed.

*States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994); *see also United States v. Dean*, 705 F.3d 745, 748 (7th Cir. 2013). The statute thus required the government to prove Johnson's knowledge of Jami's underage status. *United States v. Peel*, 595 F.3d 763, 771 (7th Cir. 2010). The government can satisfy its burden by presenting evidence that, when taken as a whole, demonstrates this knowledge. *Cf. United States v. Brown*, 135 F.4th 1102, 1107 (7th Cir. 2025) ("No single piece of evidence is a smoking gun, but the entire case presented to the jury was sufficient to support the verdict [that defendant knowingly possessed child pornography].").

Taken as a whole, the government presented sufficient evidence from which a jury could reasonably infer that Johnson knew Jami's underage status after she sent him the emails informing him she was sixteen and included the image of her driver's license reflecting she was sixteen. Not only did Jami email Johnson's male alias, but she also emailed this information to Johnson's female alias—an alias with whom Jami had developed a more trusting relationship. From that point, Johnson knew Jami's underage status and yet still possessed her nude images and repeatedly posted them online. Indeed, despite claiming to believe Jami was twenty-three, Johnson posted the images of Jami on a website under a banner advertising "teen" girls.

True, the government did not introduce expert testimony that Jami's appearance should have put Johnson on notice of Jami's underage status. While in some child pornography cases expert testimony may be "all but require[d]" to prove the knowledge element, evidence in the form of "other contextual factors" can be sufficient as well. *United States v. Dewitt*, 943 F.3d 1092, 1096–97 (7th Cir. 2019). And, here, these

"other contextual factors" allowed the jury to reasonably infer Johnson's knowledge of Jami's underage status.

Johnson makes much of the fact that his sexual preferences were for "adult" women—pointing out that his victims were all otherwise adults and he, at least initially, believed Jami was an adult as well. While a defendant's sexual preferences can be relevant, *id.*, our role is not to reweigh the competing evidence at trial, *White*, 698 F.3d at 1013. Given the government's evidence, a "rational jury could have found the [knowledge] element[] of the charged crime[s] beyond a reasonable doubt." *Presbitero*, 569 F.3d at 704. Overcoming a conviction by a jury on a motion for acquittal is a "nearly insurmountable" burden, *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021) (citation modified), and Johnson's arguments do not meet that burden. Because it appears the district court reweighed evidence in concluding Johnson did not have knowledge of Jami's underage status, it lowered Johnson's burden—an error leading us to reverse its decision.

*              *              *

For these reasons, we AFFIRM Johnson's convictions as to his sex trafficking charges and REVERSE the district court's judgments of acquittal as to his child pornography charges.

"Because a criminal sentence is a package composed of several parts, when one part of the package is disturbed, we prefer to give the district court the opportunity to reconsider the sentence as a whole so as to effectuate its sentencing intent." *United States v. Litos*, 847 F.3d 906, 909 (7th Cir. 2017) (citation modified). Accordingly, we VACATE Johnson's sentence and REMAND for the district court to reinstate the jury's child pornography convictions and to resentence Johnson.